**Opinion filed November 13, 2008**



In The

# Eleventh Court of Appeals

———

## No. 11-08-00215-CV

———

### IN RE GOLDEN PEANUT COMPANY, LLC,

---

### Original Mandamus Proceeding

---

## O P I N I O N

This is a mandamus proceeding complaining of the trial court's order denying Golden Peanut Company, LLC's motion to abate and compel arbitration. We deny the petition.

### I. *Background Facts*

Golden Peanut did not subscribe to workers' compensation insurance. It instead provided employees with an Employee Injury Benefit Plan under the Employee Retirement Income Security Act.[1] That plan included medical and disability benefits for injured employees and a death benefit in the case of job-related fatalities. Golden Peanut also gave its employees a document entitled Mutual Agreement to Arbitrate. Grant Drennan was an employee of Golden Peanut and acknowledged receiving Golden Peanut's benefit plan and arbitration agreement and agreed to comply with the arbitration agreement.

Drennan was killed while in the course and scope of his employment. Drennan's estate applied for and received plan benefits, but his widow Mindi Drennan elected to file suit against

---

[1]29 U.S.C. §§ 1001-1461.

Golden Peanut on behalf of herself, their children, and Drennan's estate rather than claim the plan's death benefit. Drennan's parents, Louie and Joyce Drennan, were subsequently added as plaintiffs. Golden Peanut filed a motion to abate and compel arbitration. Plaintiffs amended their petition and dropped the estate as a party. The trial court conducted a hearing and denied Golden Peanut's motion.

## II. *Issues*

Golden Peanut contends that the trial court abused its discretion by denying the motion to abate and compel arbitration. Plaintiffs respond that the arbitration agreement is void under Texas law, that it is not supported by consideration, and that it does not bind nonsignatories.

## III. *Standard of Review*

Golden Peanut contends, and plaintiffs do not dispute, that the arbitration agreement is subject to the Federal Arbitration Act (FAA)[2] and that an order denying a motion to compel arbitration is properly reviewable by mandamus.[3] Even though federal law applies, we still utilize Texas procedural rules when reviewing a petition for writ of mandamus. *In re Champion Technologies, Inc.*, 173 S.W.3d 595, 598 (Tex. App.—Eastland 2005, orig. proceeding). We review orders denying a motion to compel arbitration under the FAA for an abuse of discretion. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992) (orig. proceeding). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or acts in an arbitrary or unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). When reviewing matters committed to a trial court's discretion, an appellate court may not substitute its own judgment for that of the trial court. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). Nor may a reviewing court set aside the trial court's determination unless it is clear from the record that the trial court could only reach one decision. *Id.* at 840.

The trial court's interpretation of the arbitration agreement itself is a legal question subject to de novo review. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Arbitration agreements are interpreted under traditional contract principles. *Id.* Our primary concern

---

[2]*See* 9 U.S.C. §§ 1-16.

[3]*See In re Palacios*, 221 S.W.3d 564, 565 (Tex. 2006) (orders denying arbitration under the FAA are reviewable by mandamus).

2

is to ascertain the true intentions of the parties as expressed in the instrument. *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980). We examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 158 (Tex. 1951). No single provision taken alone will be given controlling effect. All the provisions must be considered with reference to the whole instrument. *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex. 1962). The contracts are construed from a utilitarian standpoint, bearing in mind the particular business activity sought to be served. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987).

IV. *Analysis*

A party seeking to compel arbitration under the FAA must establish that there is a valid arbitration clause and that the claims raised fall within its scope. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding). The first element includes gateway matters such as whether a valid arbitration clause exists and whether an arbitration clause is binding on a nonparty. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding). Courts may not order parties to arbitrate unless they have agreed to do so. *Belmont Constructors, Inc. v. Lyondell Petrochem. Co.*, 896 S.W.2d 352, 356-57 (Tex. App.—Houston [1st Dist.] 1995, no writ [appeal and orig. proceeding]). Consequently, despite a presumption favoring arbitration, a valid agreement to arbitrate remains a threshold requirement. *See In re Kellogg Brown & Root, Inc*, 166 S.W.3d 732, 737-38 (Tex. 2005) (orig. proceeding) (presumption favoring arbitration arises only after party seeking to compel arbitration establishes valid agreement to arbitrate because purpose of FAA is to make arbitration agreements as enforceable as other contracts, not more so).[4]

A. *Is the Arbitration Agreement Void?*

Plaintiffs argue initially that the arbitration agreement is void under Texas law because it violates TEX. LAB. CODE ANN. § 406.033 (Vernon 2006). This statute provides in relevant part:

> (a) In an action against an employer who does not have workers' compensation insurance coverage to recover damages for personal injuries or death

---

[4]*See also Cal. Fina Group, Inc. v. Herrin*, 379 F.3d 311, 316 n.6 (5th Cir. 2004) (the policy in favor of arbitration agreements does not apply when determining the threshold question of whether an arbitration agreement exists).

sustained by an employee in the course and scope of the employment, it is not a defense that:

> (1) the employee was guilty of contributory negligence;
> (2) the employee assumed the risk of injury or death; or
> (3) the injury or death was caused by the negligence of a fellow employee.

> (e) A cause of action described in Subsection (a) may not be waived by an employee before the employee's injury or death. Any agreement by an employee to waive a cause of action or any right described in Subsection (a) before the employee's injury or death is void and unenforceable.

Plaintiffs argue that the arbitration agreement violates this provision and is void because it contains a provision allowing parties "to allege any claim, obtain any remedy, and assert any legal or equitable defense that the party could allege, obtain or assert in a Texas state or federal court." As we understand plaintiffs' position, they contend that the agreement allows Golden Peanut to assert a common law defense in arbitration that would be unavailable in court. We disagree. The agreement does not broaden Golden Peanut's rights in an arbitration but merely confirms that both parties can assert the same claims and defenses in arbitration that they could in court.

Plaintiffs also complain that, because the arbitration agreement allows parties to use Texas discovery devices and file dispositive motions, Golden Peanut will be allowed to indiscriminately choose which provisions of Texas law will apply and which will not. First, we are not sure why the use of discovery devices and dispositive motions during arbitration makes an arbitration agreement void. The FAA gives contracting parties broad authority to determine their own dispute resolution process. Second, the agreement does not allow Golden Peanut to retroactively define the arbitration process. The process is defined by the contract, and it is up to the arbitrator to resolve any disputes over its administration.

Finally, we note that three of our sister courts have considered whether an arbitration agreement violates Section 406.033(e), and each concluded that it did not.[5] We find their reasoning persuasive. The El Paso court recognized that the FAA represents a federal policy favoring

---

[5] *See In re Bison Bldg. Materials, Ltd.*, Nos. 01-07-00003-CV & 01-07-00029-CV, 2008 WL 2548568, at *9-10 (Tex. App.—Houston [1st Dist.] June 26, 2008, orig. proceeding); *In re Border Steel, Inc.*, 229 S.W.3d 825, 832 (Tex. App.—El Paso 2007, orig. proceeding); *In re R & R Pers. Specialists of Tyler, Inc.*, 146 S.W.3d 699, 704 (Tex. App.—Tyler 2004, orig. proceeding).

4

arbitration – notwithstanding any state substantive or procedural policies to the contrary – writing that, under the Supremacy Clause,[6] the FAA "takes precedence over state attempts, legislative or judicial, to undercut the enforceability of arbitration agreements." *In re Border Steel, Inc.*, 229 S.W.3d 825, 831 (Tex. App.—El Paso 2007, orig. proceeding) (citing *In re Turner Bros. Trucking Co.*, 8 S.W.3d 370, 374 (Tex. App.—Texarkana 1999, orig. proceeding [mand. denied])). Plaintiffs' position is directly contrary to this legislative intent. Accordingly, we find that the arbitration agreement is not void.

### B. Is the Arbitration Agreement Supported by Consideration?

Plaintiffs next argue that the arbitration agreement fails for lack of consideration both generally and then specifically as applied to Louie and Joyce Drennan. The latter argument is actually a restatement of plaintiffs' contention that the agreement cannot be applied to nonsignatories and will, therefore, be addressed separately. Plaintiffs recognize that a mutual promise to waive the right to litigate can constitute consideration for an arbitration agreement but argue that there was no mutual promise here because Golden Peanut retained the right to unilaterally terminate the agreement. The arbitration agreement included the following clause:

11. Termination of Agreement

> Company shall have the right to prospectively terminate this Agreement. Termination is not effective for Covered Claims which accrued or occurred prior to the date of the termination. Termination is also not effective until ten (10) days after reasonable notice is given to Claimant.

Plaintiffs contend that this provision means only Drennan waived his right to a jury trial and, thus, that it was not a bilateral agreement.

Plaintiffs direct our attention to an unpublished opinion from the El Paso court that found an arbitration agreement was unenforceable for want of consideration. *See In re Jobe Concrete Prods., Inc.*, No. 08-02-00175-CV, 2003 WL 21757512 (Tex. App.—El Paso July 31, 2003, orig. proceeding). In that case, however, the employer's right to amend was not limited to prospective changes only. In fact, the agreement provided that the "Administrator has discretionary and final authority to interpret and implement the provisions of the Plan, including, but not limited to,

---

[6]U.S. CONST. art. VI, cl. 2.

5

correcting any defect, reconciling any inconsistency and supplying any omission, and making any and all determinations that may impact a claim." *Id.* at *4. Because of this provision, the court found the agreement unenforceable. We agree with the El Paso court's analysis but do not agree that it applies to this agreement.

This court addressed a similar issue in a case involving three individuals who filed a wrongful termination suit against their former employer and its parent company. *See In re Champion Techs., Inc.*, 222 S.W.3d 127 (Tex. App.—Eastland 2006, orig. proceeding [mand. denied]). The defendants filed a motion to compel arbitration contending that the asserted claims were subject to a written arbitration agreement. The former employees argued that the agreement was unenforceable because the employer's promise to submit to arbitration was illusory since the employer retained the unilateral right to amend the agreement. We found the employer's promise was supported by consideration because the employer could not amend or terminate the agreement after the initiation of an arbitration, there was a window of protection against any change, and amendments could have only a prospective effect. *Id.* at 132.

Golden Peanut's right to terminate the arbitration agreement operated prospectively only. It could not terminate the agreement for any accrued claim and could not terminate an employee's rights until providing at least ten days notice. Neither of which has it apparently attempted to do. The arbitration agreement was, therefore, supported by consideration.

*C. Are Plaintiffs Subject to the Arbitration Agreement?*

Golden Peanut contends that the trial court erred because plaintiffs' claims are covered by and therefore are subject to the arbitration agreement. The agreement's scope is broadly defined. The agreement provides that it covers all claims arising from:

> Any injury suffered by Claimant while in the Course and Scope of Claimant's employment with Company, including but not limited to, claims for negligence, gross negligence, and all claims for personal injuries, physical impairment, disfigurement, pain and suffering, mental anguish, wrongful death, survival actions, loss of consortium and/or services, medical and hospital expenses, expenses of transportation for medical treatment, expenses of drugs and medical appliances, emotional distress, exemplary or punitive damages and any other loss, detriment or claim of whatever kind and character.

6

"Claimant" is defined as:

> [A] person who is employed by Company and has a Covered Claim. The term also includes a Claimant's spouse, children, parents, estate, successors and assigns.

Drennan signed an acknowledgment form when he received the benefit plan and the arbitration agreement that specifically provided: "[C]laims brought by my spouse, children, parents, estate, successors and assigns are also subject to this [arbitration agreement]."

Plaintiffs do not contend that their claims are outside the agreement's scope but argue that the agreement is not binding upon them because they did not sign it. The FAA does not specify whether state or federal law applies when determining if nonsignatories are bound by an arbitration provision, and the U.S. Supreme Court has not directly addressed this issue. *Kellogg Brown & Root*, 166 S.W.3d at 738. The Fifth Circuit has applied both state and federal law. *See, e.g., Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267-68 (5th Cir. 2004) (applying federal law); *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1074-77 (5th Cir. 2002) (applying state law). The Texas Supreme Court has held that it is not convinced that state law plays no part in this determination, but it has recognized the importance of state and federal law being as consistent as possible because state and federal courts have concurrent jurisdiction to enforce the FAA. *Kellogg Brown & Root*, 166 S.W.3d at 738.

Courts have recognized six theories that may bind nonsignatories to arbitration agreements: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary. *Kellogg Brown & Root*, 166 S.W.3d at 739. Golden Peanut argues that the arbitration agreement binds plaintiffs because it specifically addresses wrongful death actions, because of the doctrine of direct benefit estoppel, and because plaintiffs' claims are derivative. Golden Peanut also argues that Mindi is bound as a third-party beneficiary.

*1. Direct Benefit Estoppel.*

The Texas Supreme Court has held that a nonparty may be compelled to arbitrate "if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision."

*Kellogg Brown & Root*, 166 S.W.3d at 741.[7]  This doctrine, however, does not apply if the claimed benefits are "insubstantial" or "indirect." *Weekley Homes*, 180 S.W.3d at 134.  Nor does it apply if the claim merely "relates" to the contract. *Kellogg Brown & Root*, 166 S.W.3d at 741.  Whether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not artful pleading. *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991).  Claims must be brought on the contract if liability arises solely from the contract or must be determined by reference to it. *Weekley Homes*, 180 S.W.3d at 132.  But nonsignatory claims that "can stand independently of the underlying contract" should generally not be arbitrated. *Kellogg Brown & Root*, 166 S.W.3d at 739-40.

A lawsuit seeking contractual benefits subjects the claimant to an arbitration clause in the contract whether it signed the contract or not. *See FirstMerit Bank*, 52 S.W.3d at 755-56.  However, a party can also bind itself to an arbitration provision through its conduct during the life of the contract. *Weekley Homes*, 180 S.W.3d at 132.  For example, using a trade name pursuant to an agreement containing an arbitration clause or receiving lower insurance rates and the ability to sail under the French flag because of a contract containing an arbitration clause bound nonsignatories to the arbitration provisions.[8]

Golden Peanut argues that plaintiffs received direct benefits under the plan but does not specify what benefits they received.  The record contains references to a claim for benefits by Drennan's estate, but the estate is no longer a party.  The mere fact that the estate may ultimately distribute cash it receives from its claim to Drennan's heirs does not convert the estate's claim to a direct claim by any of them.

Golden Peanut next argues that plaintiffs' negligence claim must be determined by reference to Drennan's at-will employment relationship and that this relationship was governed by the benefit

---

[7]The arbitration agreement and the benefit plan are separate agreements, but the Receipt and Arbitration Acknowledgment Drennan executed indicates that they were presented to him at the same time and as part of the same transaction.  We are, therefore, construing them together. *See Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby*, 183 S.W.3d 891, 901 (Tex. App.—Austin 2006, orig. proceeding) (documents executed at the same time, by the same parties, for the same purposes, and as part of the same transaction were construed together).

[8]*See Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) (nonsignatories received lower insurance rates and the ability to sail under the French flag pursuant to contract); *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993) (firm used trade name pursuant to contract).

plan and arbitration agreement. We disagree because the benefit plan specifically provides otherwise. Paragraph 12.2 is entitled "Employment Noncontractual" and reads:

> The establishment of this Plan shall not enlarge or otherwise affect an Employee's "at will" employment by an Employer, and an Employer may terminate the employment of any Employee at any time and/or modify the Employee's working relationship as desired, at-will for any or no reason (with or without cause), as freely and with the same effect as if this Plan had not been established.

The benefit plan provides benefits for employees, but it does not speak to Golden Peanut's duty to provide a safe workplace or otherwise govern the employment relationship. We note that plaintiffs are not asserting that Golden Peanut violated a contractual duty but a common law duty and that they are not seeking contractual damages but are seeking statutory wrongful death damages.

Golden Peanut correctly notes that Drennan's family was protected by the benefit plan for two years prior to his death. This, however, only made them incidental beneficiaries of the agreement. Drennan himself was the intended beneficiary. *See Gaskamp*, 280 F.3d at 1076 (children were incidental beneficiaries when they lived in home with their parents who agreed to arbitration provision in connection with their purchase of the home); *see also Sw. Tex. Pathology Assocs. v. Roosth*, 27 S.W.3d 204 (Tex. App.—San Antonio 2000, pet. dism'd w.o.j.) (wife was not bound by arbitration provision in husband's professional partnership agreement because her suit against her husband and the partnership did not seek to enforce the terms of the agreement but asserted tort claims). Because plaintiffs are not asserting a contractual claim, because by their individual conduct they have not attempted to take advantage of the benefit plan, and because their claims are independent of the benefit plan, the doctrine of direct benefit estoppel is inapplicable.

### 2. Derivative Claims.

Golden Peanut contends that, because a wrongful death claim is entirely derivative of the decedent's right to sue for his own injuries, plaintiffs are bound by Drennan's agreement to arbitrate personal injury claims. *See Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 347 (Tex. 1992) ("the right of statutory beneficiaries to maintain a wrongful death action is entirely derivative of the decedent's right to have sued for his own injuries immediately prior to his death," and the beneficiaries "stand in the legal shoes of the decedent"). Because a wrongful death claim is derivative, Texas courts have held that defendants can assert any defense against a statutory

beneficiary that they could have asserted against the decedent. *See, e.g., id.* (statute of limitations); *Winkler v. Kirkwood Atrium Office Park*, 816 S.W.2d 111, 115 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (membership agreement release signed by member releasing club from injuries suffered while participating in fitness center programs released all claims against all individuals and entities, including wrongful death claims filed by nonsignatory wife and children).[9] Golden Peanut argues that, because it could have raised the arbitration agreement in response to a lawsuit filed by Drennan, it necessarily follows that it can raise the agreement in response to plaintiffs' litigation.

Golden Peanut cites no case in which a Texas court found that a claimant was bound by an arbitration agreement because its claim was derivative, and we have found none in our own research. In *Russell*, 841 S.W.2d at 346-47, the Texas Supreme Court considered the impact of a claim being characterized as derivative. The court reiterated that a wrongful death action can be maintained only if the deceased could have maintained a suit for his own injuries immediately prior to his death. *Id.* at 347. In support of this holding, the court cited numerous cases where a defendant was entitled to raise a defensive issue against the wrongful death claimant; however, the court did not cite a single case in which the claimant's choice of forum was determined by its status as a derivative claimant. *Id.* at 347 n.7. This suggests that there is a distinction between a defendant's right to raise a defense predicated upon a contract with the decedent – such as a liability limitation provision – and the defendant's right to impose an arbitration agreement with the decedent upon statutory beneficiaries.

That distinction may be explained by the fact that, even though wrongful death claims are derivative, their recovery is personal to the beneficiary. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 71.004(a), 71.010(b) (Vernon 2008). Courts have repeatedly recognized that wrongful death claimants have an individually owned statutory cause of action. For example, the Houston First court held that a widow's wrongful death claim was personal to her and, thus, not subject to an arbitration agreement between her husband and his nursing home. *See In re Kepka*, 178 S.W.3d 279, 293 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding). The court noted that, under basic

---

[9] *See also Maderazo v. Archem Co.*, 788 S.W.2d 395, 397 (Tex. App.—Houston [14th Dist.] 1990, no writ) (action against decedent's employer barred by Workers' Compensation Act); *Kelley v. City of* Austin, 268 S.W.2d 773, 775 (Tex. Civ. App.—Austin 1954, no writ) (action barred by governmental immunity); *Childs v. Childs*, 107 S.W.2d 703, 704 (Tex. Civ. App.—Beaumont 1937, no writ) (action barred by interspousal immunity); *Sullivan-Sanford Lumber Co. v. Watson*, 155 S.W. 179, 180 (Tex. 1913) (the pass issued to the decedent limited liability of private logging railroad for injuries or death and was binding on wrongful death beneficiaries).

contract principles, parties to an arbitration agreement generally lack the authority to bind others without privity of contract. *Id.* at 296. The widow signed the agreement with the nursing home but did so on behalf of her husband. Because she lacked privity of contract, she was not subject to the arbitration agreement. *Id.*; *see also Merrill Lynch, Pierce, Fenner, and Smith, Inc. v. Longoria*, 783 S.W.2d 229, 231 (Tex. App.—Corpus Christi 1989, no writ) (wife not required to arbitrate claim for loss of consortium even though it was derivative of wrongful termination claim of her husband who was subject to arbitration under employment contract).

Because Drennan's statutory beneficiaries have an individual right of recovery, the mere fact that he executed an arbitration agreement does not bind them to arbitration. The agreement refers to a broad range of claims and claimants, but Drennan signed it in his individual capacity. Moreover, our record contains no evidence that he was authorized to contract on behalf of his spouse or parents, and the fact that he was a parent does not make his agreement automatically binding upon his children. *See Gaskamp*, 280 F.3d at 1076 (Texas law does not ordinarily bind children to the contracts their parents sign). The trial court did not abuse its discretion by failing to find that plaintiffs were bound by the arbitration agreement as derivative claimants.

### 3. Third-Party Beneficiary.

Golden Peanut argues that Mindi is a third-party beneficiary of the benefit plan and, therefore, is subject to the arbitration agreement. The general rule is that parties contract for themselves unless it clearly appears that they intended to confer a direct benefit on a third party. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). The benefit plan provides a death benefit and designates a surviving spouse as the primary beneficiary. Mindi is, accordingly, a third-party beneficiary. As such, she is bound by the arbitration agreement. *In re Rangel*, 45 S.W.3d 783, 787 (Tex. App.—Waco 2001, orig. proceeding) (wife was third-party beneficiary of husband's contract with exterminator and was bound by the contract's arbitration provision); *Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518, 520 (Tex. App.—Austin 1998, no pet.) (wife was bound by arbitration provision in mobile home purchase agreement signed by husband because she was a third-party beneficiary of that contract).

This would ordinarily require that we order her claim be submitted to arbitration, but the agreement provides inconsistent directives for this instance. As we noted earlier, the agreement has

11

broad language that specifically covers a wrongful death claim by a surviving spouse. However, in Paragraph 5b(i), the agreement also provides that it "*does not apply*" to claims for benefits under the plan (emphasis added).

Mindi's position is apparently that we need not address this because she did not sign the agreement and is not seeking contractual benefits. Whether her suit seeks contractual benefits is not dispositive. Texas courts recognize a distinction between procedural arbitrability and substantive arbitrability. Substantive arbitrability encompasses gateway issues such as whether a particular agreement binds the parties to arbitrate. *In re R & R Pers. Specialists of Tyler, Inc.*, 146 S.W.3d 699, 705 (Tex. App.—Tyler 2004, orig. proceeding). These questions are resolved by the trial court. *Id.* Procedural arbitrability involves questions that "grow out of the dispute and bear on its final disposition." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). If the arbitration agreement requires that Mindi's claim be arbitrated, it is for the arbitrator to determine whether her recovery is limited to the benefit plan. *See id*. at 85-86.[10]

No party has raised the issue of ambiguity; however, a court may conclude that a document is ambiguous on its own motion. *See Grimes v. Andrews*, 997 S.W.2d 877, 881 (Tex. App.—Waco 1999, no pet.) (court may conclude that a contract is ambiguous even when the parties do not plead ambiguity). While we can look at the benefit plan and the arbitration agreement and make suppositions about the intent to include a wrongful death claim by a surviving spouse, we are not authorized to find facts but only to unfind them. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex. 1986). Because we cannot make a factual determination about the parties' intent, we cannot say that the trial court abused its discretion when it held that Mindi was not bound by the arbitration agreement. This holding is without prejudice to the parties' right to pursue the arbitration agreement's application to Mindi as a third-party beneficiary further in the trial court.

V. <em>Holding</em>

The petition is denied.


November 13, 2008                                                    RICK STRANGE

Panel consists of: Wright, C.J.,                                    JUSTICE
McCall, J., and Strange, J.

---

[10]That conclusion in this case is bolstered by the arbitration agreement's language, which provides: "The question of whether any particular claim is a Covered Claim under the terms of this Agreement shall be arbitrated pursuant to the procedures set forth in this Agreement."