COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


NUMBER 13-08-00547-CV


HARTFORD LIFE INSURANCE COMPANY, ET AL., Appellants,


v. 


MICHAEL FORMAN, INDIVIDUALLY AND

MICHAEL FORMAN, M.D., P.A., Appellees.

 


On Appeal from the 197th District Court of Cameron County, Texas.

 


NUMBER 13-08-00603-CV


IN RE: HARTFORD LIFE INSURANCE COMPANY, ET AL.

 


On Petition for Writ of Mandamus.

 


MEMORANDUM OPINION



Before Justices Yanez, Garza, and Vela


Memorandum Opinion by Justice Vela
 

 Hartford Life Insurance Company, Jan Mohamed, and King, Mohamed &
Associates, Inc., have brought a petition for writ of mandamus in cause number 13-08-00547-CV, and an interlocutory appeal in cause number 13-08-00603-CV challenging the
trial court's denial of their motions to compel arbitration. We dismiss the appeal and deny
the petition for writ of mandamus as stated herein.

I. Background


 Michael Forman and Michael Forman, M.D., P.A. (collectively "Forman") contracted
with Jan Mohamed and King, Mohamed & Associates, Inc. (collectively "Mohamed") to
provide financial services. Mohamed represented himself as a financial planner who could
design a conservative and legal financial plan that would offer Forman significant tax
benefits. Mohamed advised Forman to invest in a single employer benefit plan (the "Plan")
that qualified under section 419(e) of the Internal Revenue Code. Mohamed represented
that the contributions to this Plan were tax-deductible and that Forman did not have to
enroll his medical office employees in the Plan. Niche Marketing, Inc. ("Niche") prepared
the agreement whereby Forman adopted the Plan. The Plan was funded by life insurance 
policies that were allegedly analyzed and underwritten by Hartford Life Insurance Company
("Hartford"). Niche Plan Sponsors, Inc. is the "Trust Administrator" for the Plan, and Wells
Fargo Bank, N.A., is the Trustee under the Plan. (1) Forman, Mohamed, and Niche
discussed the Plan numerous times. 

 After inception of the Plan, Forman discovered that the Plan did not work as
Mohamed had represented. Forman found that he was required to enroll his medical office
employees in the Plan, thereby incurring substantial costs. Moreover, the Internal
Revenue Service audited the Plan and ruled that the Plan was an illegal tax shelter,
requiring Forman to pay a substantial amount in unpaid taxes, plus penalties and interest. 
 Forman brought suit against Mohamed, Niche, and Hartford for fraud, fraudulent
inducement, negligent misrepresentation, negligence, breaches of the insurance code and
the deceptive trade practices act, and breach of contract. Mohamed and Hartford moved
to compel arbitration based on an arbitration clause contained in Forman's agreement with
Niche Plan Sponsors, Inc. Forman settled with Niche, and filed an amended petition
against the remaining defendants. 

 The arbitration clause at issue is contained in the "Adoption Agreement" between
Forman and Niche Plan Sponsors, Inc. Specifically, the acknowledgment and disclosure
section of the Plan provides that "[a]ny unresolved disputes or claims involving this Plan
will be settled by arbitration conducted by the American Arbitration Association in
California." Forman had separate contracts with Hartford and Mohamed which did not
contain arbitration clauses.

 Hartford and Mohamed moved to compel arbitration based on the arbitration clause
contained in the Adoption Agreement. The trial court denied the motion to compel, and
these proceedings ensued.

 II. Federal Arbitration Act or Texas Arbitration Act


 The trial court's order denying the motion to compel arbitration did not specify
whether the arbitration agreement in this case was governed by the Federal Arbitration Act
("FAA") or the Texas Arbitration Act ("TAA"). See 9 U.S.C. §§ 1-16 (1999) (FAA); Tex. Civ.
Prac. & Rem. Code Ann. §§ 171.001-.098 (Vernon 1997 and Supp. 2008) (TAA). 
Therefore, Hartford and Mohamed seek review of the order denying arbitration both by
mandamus and interlocutory appeal. See Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d
266, 272 (Tex. 1992) (providing that litigants alleging entitlement to arbitration under the
FAA and TAA must pursue parallel proceedings).

 The FAA "extends to any contract affecting commerce, as far as the Commerce
Clause of the United States Constitution will reach." L & L Kempwood Assocs., L.P. v.
Omega Builders, Inc. (In re L & L Kempwood Assocs., L.P.), 9 S.W.3d 125, 127 (Tex.
1999) (per curiam) (combined appeal & orig. proceeding); see In re Nexion Health at
Humble, Inc., 173 S.W.3d 67, 69 (Tex. 2005) (orig. proceeding); see also 9 U.S.C. § 2
(2005). "Commerce" has been broadly defined and encompasses contracts relating to
interstate commerce. See In re Gardner Zemke Co., 978 S.W.2d 624, 626 (Tex. App.-El
Paso 1998, orig. proceeding). The FAA does not require a substantial effect on interstate
commerce; rather, it requires commerce to be involved or affected. See L & L Kempwood
Assocs., L.P., 9 S.W.3d at 127.

 In the instant case, the parties to the agreement at issue are from different states. 
Niche is a California corporation, and Forman is a Texas individual and professional
association. See id. at 126-27 (finding interstate commerce when parties to contract
reside in different states). Hartford, which is not a signatory to the agreement, is a foreign
corporation that is licensed to do business in Texas. Mohamed, also not a signatory to the
agreement, is a Texas resident and Texas corporation. The dispute at issue concerns
alleged misrepresentations regarding the propriety, legality, and financial effects of the
implementation of an employee welfare benefit plan in accordance with the Internal
Revenue Code and the adoption of a "collective" and "[n]ational" trust to fund the plan's
benefits therein. The "Trustee" for the Plan is a bank which is not a party to these
proceedings. Forman does not challenge the application of the FAA to the agreement. 
Under these circumstances, we conclude that the agreement evidences a transaction
involving interstate commerce. Cf. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wilson,
805 S.W.2d 38, 39 (Tex. App.-El Paso 1991, no writ) (holding that securities account
agreement is contract for purpose of trading securities and clearly involves commerce
within scope of Federal Arbitration Act). Therefore, the agreement at issue is subject to
the FAA.

 When a trial court erroneously denies a motion to arbitrate under the FAA,
mandamus is the appropriate remedy. In re Halliburton Co., 80 S.W.3d 566, 573 (Tex.
2002) (orig. proceeding); see 9 U.S.C.A. § 4 (2005) (providing, in part, that "[a] party
aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written
agreement for arbitration may petition . . . for an order directing that such arbitration
proceed in the manner provided for in such agreement"); Nabors Drilling USA, LP v.
Carpenter, 198 S.W.3d 240, 246 (Tex. App.-San Antonio 2006, orig. proceeding).
Accordingly, we dismiss the interlocutory appeal and consider the merits of the petition for
writ of mandamus. 

III. Standard of Review


 To be entitled to mandamus relief, a petitioner must show that the trial court clearly
abused its discretion and that the relator has no adequate remedy by appeal. In re
Prudential Ins. Co. of Am., 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding) (citing
Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)); see In re McAllen
Med. Ctr., Inc., 275 S.W.3d 458, 2008 Tex. LEXIS 5759, at *6 (Tex. Aug. 29, 2008) (orig.
proceeding). We may not substitute our judgment for that of the trial court with respect to
the resolution of factual issues or matters within the trial court's discretion. Walker, 827
S.W.2d at 839-40. The relator must show that the trial court could reasonably have
reached only one decision. Id. The reviewing court cannot disturb the trial court's decision
unless it is shown to be arbitrary and unreasonable. Id. With respect to the trial court's
decision on legal issues, our review is much less deferential. Id. at 840. A trial court has
no discretion in determining what the law is or applying the law to the facts. Id. Thus, a
clear failure by the trial court to analyze or apply the law correctly will constitute an abuse
of discretion. Id. 

 IV. Validity and Scope


 A party seeking to compel arbitration by a writ of mandamus must (1) establish the
existence of a valid agreement to arbitrate under the FAA, and (2) show that the claims in
dispute are within the scope of the agreement. In re Kellogg Brown & Root, Inc., 166
S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "Whether a valid arbitration agreement
exists is a legal question subject to de novo review." In re D. Wilson Constr. Co., 196
S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). In determining the validity of agreements
to arbitrate which are subject to the FAA, we generally apply state-law principles governing
the formation of contracts. In re Palm Harbor Homes, Inc., 195 S.W.3d 672, 676 (Tex.
2006) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). If the
trial court finds there is a valid agreement to arbitrate, the burden shifts to the party
opposing arbitration to prove his defenses. J.M. Davidson, Inc. v. Webster, 128 S.W.3d
223, 227 (Tex. 2003). 

 Once a valid agreement to arbitrate has been established, the court must then
determine whether the arbitration agreement covers the nonmovants' claims. In re
FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). To determine
whether an existing arbitration agreement covers a party's claims, a court must "focus on
the complaint's factual allegations rather than the legal causes of action asserted." Id. at
754. Federal policy embodied in the FAA favors agreements to arbitrate, and courts must
resolve any doubts about an arbitration agreement's scope in favor of arbitration. Id. at
753. If the arbitration agreement encompasses the claims and the party opposing
arbitration has failed to prove its defenses, the trial court has no discretion but to compel
arbitration and stay its own proceedings. Id. at 753-54; D.R. Horton, Inc. v. Brooks, 207
S.W.3d 862, 866-67 (Tex. App.-Houston [14th Dist.] 2006, no pet.); Feldman/Matz
Interests, L.L.P. v. Settlement Capital Corp., 140 S.W.3d 879, 883 (Tex. App.-Houston
[14th Dist.] 2004, no pet.).

V. Agreement to Arbitrate


 "Courts may not order parties to arbitrate unless they have agreed to do so." In re
Golden Peanut Co., LLC, 269 S.W.3d 302, 307 (Tex. App.-Eastland 2008, orig.
proceeding); Belmont Constructors, Inc. v. Lyondell Petrochemical Co., 896 S.W.2d 352,
356-57 (Tex. App.-Houston [1st Dist.] 1995, no writ) (combined appeal & orig. proceeding);
see Freis v. Canales, 877 S.W.2d 283, 284 (Tex. 1994) ("While courts may enforce
agreements to arbitrate disputes, arbitration cannot be ordered in the absence of such an
agreement."). Therefore, despite strong presumptions that favor arbitration, a valid
agreement to arbitrate remains a settled, threshold requirement to obtaining relief, whether
under the TAA or the FAA. See Kellogg Brown & Root, Inc., 166 S.W.3d at 737-38
(analyzing the FAA); J.M. Davidson, Inc., 128 S.W.3d at 227 (analyzing the TAA). We
keep in mind that a purpose of the FAA is "to make arbitration agreements as enforceable
as other contracts, but not more so." In re Labatt Food Serv., L.P., No. 07-0419, 2009 Tex.
LEXIS 28, at *3-5 (Tex. Feb. 13, 2009) (orig. proceeding) (quoting Prima Paint Corp. v.
Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n.12 (1967)); see Kellogg Brown & Root, Inc.,
166 S.W.3d at 738.

VI. Nonsignatories


 The initial burden of establishing the existence of an arbitration agreement includes
proving that the party seeking to enforce the agreement was a party to the agreement or
otherwise had the right to enforce it. Mohamed v. Auto Nation USA Corp., 89 S.W.3d 830,
836 (Tex. App.-Houston [1st Dist.] 2002, no pet.) (combined appeal & orig. proceeding). 
It is undisputed that Mohamed, his firm, King, Mohamed & Associates, Inc., and Hartford
are neither signatories nor parties to the contract between Forman and Niche Plan
Sponsors, Inc. 

 Under the FAA, whether an arbitration agreement binds a nonsignatory is a gateway
matter to be determined by courts rather than arbitrators unless the parties clearly and
unmistakably provide otherwise. Labatt Food Serv., L.P., 2009 Tex. LEXIS 28, at *3-5; In
re Weekley Homes, L.P., 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding); see
Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83-84 (2002). When the arbitration
agreement is silent about who is to determine whether particular persons or entities are
bound by the agreement, courts, rather than the arbitrator, should determine the issue. 
Labatt Food Serv., L.P., 2009 Tex. LEXIS 28, at *3-5. We apply Texas procedural rules
in determining whether nonsignatories are bound by an arbitration agreement. See id.;
Weekley Homes, 180 S.W.3d at 130. We apply state substantive law and endeavor to
keep it consistent with federal law in determining whether nonsignatories are bound to
arbitrate under an agreement subject to the FAA.

 Nonsignatories or nonparties to an agreement containing an arbitration clause may
be bound by the provisions of the clause "when the rules of law or equity would bind them
to the contract generally." Weekley Homes, 180 S.W.3d at 129. Federal arbitration law
recognizes several theories of contract and agency law that authorize binding a
nonsignatory to an arbitration agreement. See Kellogg Brown & Root, Inc., 166 S.W.3d
at 739. A "contract theory" must tie the nonsignatory to the arbitration provisions sought
to be enforced. See In re Merrill Lynch Trust Co. FSB, 235 S.W.3d 185, 187, 194 (Tex.
2007) (orig. proceeding). 

 Relators invoke the two following, contract-based theories in seeking to compel
arbitration: (1) that Forman was equitably estopped from contesting applicability of the
arbitration clause in its contract with Niche; and (2) that relators were third-party
beneficiaries of that contract. See id. at 193 (addressing equitable estoppel theory of
enforcement); Palm Harbor Homes, Inc., 195 S.W.3d at 677 (addressing third-party
beneficiary theory of enforcement).


A. Equitable or "Direct Benefits" Estoppel


 Under the "equitable estoppel" doctrine, when a nonsignatory to a contract that
contains an arbitration provision sues on the contract and seeks a direct benefit from the
contract, the nonsignatory is estopped to deny enforceability of the arbitration provision of
the contract that the signatory seeks to enforce. See In re U.S. Home Corp., 236 S.W.3d
761, 765 (Tex. 2007) (orig. proceeding); Merrill Lynch, 235 S.W.3d at 191; Weekley
Homes, 180 S.W.3d at 131-32; Kellogg Brown & Root Inc., 166 S.W.3d at 739; see also
Meyer v. WMCO-GP, LLC, 211 S.W.3d 302, 307 (Tex. 2006); FirstMerit Bank, 52 S.W.3d
at 755. The doctrine also applies when the signatory to a written agreement containing an
arbitration clause must rely on the terms of the written agreement in asserting its claims
against the nonsignatory. See Meyer, 211 S.W.3d at 306 (citing Grigson v. Creative Artists
Agency, L.L.C., 210 F.3d 524, 527 (5th Cir. 2000)); Trammell v. Galaxy Ranch Sch., L.P.
(In re Trammell), 246 S.W.3d 815, 821 (Tex. App.-Dallas 2008, no pet.) (combined appeal
& orig. proceeding). When each of a signatory's claims against a nonsignatory references
or presumes the existence of the written agreement, the signatory's claims arise out of and
relate directly to the written agreement, and arbitration is appropriate. Meyer, 211 S.W.3d
at 306; see Grigson, 210 F.3d at 527. When a party's right to recovery and damages
depend on the agreement containing the arbitration provision, the party is relying on the
agreement for its claims. See Meyer, 211 S.W.3d at 307. 

 The doctrine does not apply, however, when the claimed benefits are "insubstantial"
or "indirect," see Weekley Homes, 180 S.W.3d at 134, or when the claim merely "relates"
to the contract. Kellogg Brown & Root, Inc., 166 S.W.3d at 741. Claims by a nonsignatory
that "can stand independently of the underlying contract" should generally not be arbitrated. 
See id. at 739-40. Moreover, arbitration cannot be compelled based solely on substantially
interdependent and concerted misconduct. See Merrill Lynch, 235 S.W.3d at 191;
Trammell, 246 S.W.3d at 821. Further, equitable estoppel cannot give nonsignatories a
greater right to arbitration than the signatories themselves have. See Meyer, 211 S.W.3d
at 306.

 Through an "Adoption Agreement," Forman adopted the Plan to provide benefits to
certain employees and adopted a collective trust, known as the "National Benefit Trust I,"
to fund the Plan. Under the agreement, Mohamed and his firm were appointed "to serve
with the Trust Administrator on the Severance Committee." Forman agreed to indemnify
"the Trust Administrator, Trustee, and Insurer" and their agents and representatives for
specified activities pursuant to the Plan or Trust. Forman further agreed that he adopted
the Plan and Trust only after "seeking the advice of independent counsel" and that he did
not rely on the "Trust Administrator, Trustee, or Insurer" with respect to tax advice. The
arbitration clause is in a separate document, which also provides that "The Insurance
Carrier will be responsible solely for the promises contained in its insurance contracts." 
There is another separate document, the "Fixed Premium Acknowledgment," signed by
Mohamed, warning Forman that the premiums due on the life insurance policies were not
flexible and the policies would lapse if untimely paid. Based on the record presented to the
Court, Hartford is not identified as the "Insurer" or the "Insurance Carrier" in the agreement
or attachments thereto, and Mohamed is not mentioned in any other capacity than as
serving on the "Severance Committee." 


 In the instant case, based on the testimony herein, both Hartford and Mohamed had
separate contracts with Forman which did not contain arbitration clauses. To allow
Hartford and Mohamed to compel arbitration with Forman would allow them to effectively
rewrite their contracts. Merrill Lynch Trust Co. FSB, 235 S.W.3d at 191 ("Those affiliates
signed their own contracts with the plaintiffs, which had no arbitration clauses. As allowing
these affiliates to compel arbitration would effectively rewrite their contracts, we hold they
cannot."). Moreover, Forman's claims against Hartford and Mohamed do not rely upon the
Niche contract. See Meyer, 211 S.W.3d at 307. Forman does not seek the benefits of the
Niche contract against Hartford or Mohamed or otherwise invoke any obligation arising
under the Niche contract. Accordingly, we conclude that relators cannot invoke equitable
estoppel to compel arbitration of Forman's claims against them. 

B. Third-Party Beneficiaries


 Relators also contend that they can enforce the Niche arbitration clause because
they are third-party beneficiaries of the Niche contract. A stranger to a contract may
enforce the contract as a third-party beneficiary if the parties to the contract intended to
secure a benefit to that third party and entered into the contract directly for the third party's
benefit. Palm Harbor Homes, Inc., 195 S.W.3d at 677; Stine v. Stewart, 80 S.W.3d 586,
589 (Tex. 2002); MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 651
(Tex. 1999); In re Citgo Petroleum Corp., 248 S.W.3d 769, 775 (Tex. App.-Beaumont
2008, orig. proceeding). A party is presumed to contract only for its own benefit; thus, any
intent to benefit a third party must be clearly apparent. MCI Telecomms. Corp., 995
S.W.2d at 652; In re Bayer Materialscience, LLC, 265 S.W.3d 452, 456 (Tex.
App.-Houston [1st Dist.] 2007, orig. proceeding). There is a presumption against, not in
favor of, third-party beneficiary agreements. MCI Telecomms. Corp., 995 S.W.2d at 652;
In re SSP Partners, 241 S.W.3d 162, 170 (Tex. App.-Corpus Christi 2007, orig.
proceeding). 

 In this case, the Niche agreement does not name Mohamed or Hartford as parties
to the agreement or as beneficiaries under the contract, nor does it otherwise express that
they have any right to enforce it. The agreement does not require Mohamed or Hartford
to arbitrate claims arising under the agreement. Mohamed and Hartford have presented
no evidence showing that the Niche agreement is intended to confer upon them the right
to sue to enforce the contract. Thus, the contract language does not overcome the
presumption against vesting a right of enforcement in a nonsignatory. See Bayer
Materialscience, LLC, 265 S.W.3d at 456. Accordingly, we conclude that Hartford and
Mohamed do not qualify as third party beneficiaries to the contract and cannot enforce its
arbitration clause.

VII. Conclusion


 We conclude that the trial court did not err in refusing to order the underlying matter
to arbitration. We dismiss the interlocutory appeal in cause number 13-08-00547-CV. We
deny the petition for writ of mandamus in cause number 13-08-00603-CV. See Tex. R.
App. P. 52.8(a). 

 

 ROSE VELA

 Justice


Memorandum Opinion delivered and 

filed this 3rd day of June, 2009. 
1. Neither Niche Plan Sponsors, Inc. nor Wells Fargo were named as parties in the underlying lawsuit.