In re BAYER MATERIALSCIENCE, LLC, Relator.

No. 01–07–00732–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 1, 2007.

C. Thomas Kruse, Dean D. Hunt, James L. Moore, Glen Shu, Gregory C. Ulmer, Baker & Hostetler LLP, Houston, TX, for Relator.

David Willis Alexander, John E. Williams Jr., Collyn A. Peddie, Jim S. Hart, Williams, Kherkher, Hart, Boundas, LLP, Houston, TX, for Real Party In Interest.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

JANE BLAND, Justice.

In this original proceeding, Bayer Materialscience, LLC (Bayer), complains of

the trial court's order denying its motion to compel arbitration.[1] We deny mandamus relief.

## Background

In September 2006, an explosion occurred at a Bayer plant near Baytown, Texas. Brock Services, Ltd. (Brock) provided scaffolding, insulation, and painting services at the Baytown plant. A number of Brock employees worked at Bayer's plant on the day of the explosion. In the case underlying this mandamus, some of the Brock employees sue Bayer for personal injuries they allege they sustained during the explosion. During discovery, Brock produced employment applications the plaintiffs signed before accepting employment with Brock. The Brock employment applications contain a three-page "dispute resolution agreement" (DRA) that requires arbitration of any and all claims. Upon discovering the existence of the DRA, Bayer moved to compel arbitration, contending that it is a third party beneficiary to the arbitration agreement that the plaintiffs had with Brock, their employer.

*The Dispute Resolution Agreement*

Before Brock's employees were hired, each received an application package with a number of documents, including the DRA. Each of the Brock employees signed the DRA as part of applying for employment with Brock. The DRA provides for "final and binding arbitration," stating in pertinent part:

**Company and Applicant mutually contract and agree** that the [arbitration] procedures set forth herein shall be the sole and exclusive legal process available for resolving and finally settling each, every, any and all claims, disputes or controversies between or among them,

**and also between or among all other persons named, described, referred to and/or stated anywhere in this agreement.** Those claims, disputes and controversies shall include, but are not limited to, those arising from or in any way related to Applicant's application for employment, the Company's consideration of this application, from any references or statements made by any prior Employer, their employment and/or other relationships with the Company, and/or any of its parents, subsidiaries, and/or any affiliated legal person(s), **and if hired, for all claims, disputes and controversies with or against Company's customers, clients and/or any other person(s) under contract with the Company, including their subsidiaries, affiliates and parents, and/or the owner(s) of any and all property upon which and/or with which, Applicant may or has performed any work or services for or on behalf of any person.**

(Emphasis added). The DRA further defines "Company's Customer" as "every legal person or entity, with whom or on the premises of whom, or with any property of whom, this Company is or has been engaged in any business or provided any service ..." The DRA provides that arbitration shall be conducted before an arbitrator of National Mediation Arbitration, Inc. ("NMAI"). The NMAI is a defunct organization and was so at the time the employees signed the DRA. The DRA also provides:

The parties expressly agree that the terms of this dispute resolution agreement shall always govern all of their transactions and relationships, and shall survive each, every, any and all termi-

---

**1.** Respondent is the Honorable Chap B. Cain, judge of the 253rd District Court of Brazoria County, Texas. The underlying proceeding is

*Oran A. Whittington, III and Charles L. Henderson, Jr. v. Bayer Materialscience LLC and James Newport,* cause no. 22949.

nations, resumptions, reinstatements, and/or renewals of the parties' relationship.

The Brock Employee handbook contains an arbitration agreement similar to the DRA contained in the job application packet.[2] As a condition of their employment, Brock employees sign a "Conditional Offer of Employment," in which the employee agrees that he or she is required to comply with all of Brock's rules, policies, and procedures. Each applicant also signs a document entitled "Policy Summaries," which includes the statement that "[a]ll employees are expected to comply with the policies described in the Employee Handbook." Finally, each applicant signs an "Acknowledgment of Receipt of Employee Handbook."[3]

*The Trial Court's Ruling*

After a hearing, the trial court denied Bayer's motion to arbitrate. The trial court found that the DRAs in the employment applications had terminated by their express terms, that the employee handbook did not create a contract to arbitrate, that no grounds exist to compel arbitration, and that the agreements were "unconscionable, void, and unenforceable from the day they were signed." Bayer petitions for a writ of mandamus, seeking to enforce Brock's agreement to arbitrate against the plaintiffs in their suit against Bayer. The plaintiffs respond, contending, as they did in the trial court, among other grounds, that Bayer is not an intended third-party beneficiary of the arbitration agreement, and therefore it cannot enforce

the arbitration agreement independent of Brock.

**Standard of Review**

A writ of mandamus issues to correct a clear abuse of discretion when no adequate remedy at law exists. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). A party seeking relief from the denial of arbitration sought under the Federal Arbitration Act ("FAA") has no adequate remedy by appeal and is entitled to mandamus relief to correct a clear abuse of discretion by the trial court. *In re L & L Kempwood Assoc., L.P.,* 9 S.W.3d 125, 128 (Tex.1999) (per curiam).

A party seeking to compel arbitration by mandamus must show the existence of an arbitration agreement subject to the FAA. *In re J.D. Edwards World Solutions Co.,* 87 S.W.3d 546, 549 (Tex. 2002) (per curiam). If an agreement to arbitrate exists encompassing the claims in question, and the party opposing arbitration has failed to prove its defenses, then a trial court has no discretion; its only option is to compel arbitration. *In re First-Merit Bank, N.A.,* 52 S.W.3d 749, 753 (Tex.2001).

**Analysis**

Arbitration is a creature of contract, and parties seeking to compel arbitration must rely upon an agreement to arbitrate. *In re Merrill Lynch,* 50 Tex. Sup.Ct. J. 1030, 235 S.W.3d 185, 187 (Tex. 2007) ("In considering referral to arbitration, the question is ... which [forum] the parties picked."). If such an agreement

---

**2.** There are some differences in the two agreements. For example, the arbitration provision of the Employee Handbook provides for arbitration before the National Association for Dispute Resolution, Inc. ("NADR").

**3.** The mandamus record contains a copy of an "Acknowledgment of Receipt of Employee Handbook" from only 28 of the real parties in interest. Brock Employee Sandra Garza testified, however, that every Brock Employee must sign the acknowledgment before beginning work for the company.

exists, then the law favors enforcing it. But the law favoring arbitration does not go so far as to create an obligation to arbitrate where none exists. *Id.* at 192 ("arbitration 'is a matter of consent, not coercion,'... [and] the Act 'does not require parties to arbitrate when they have not agreed to do so.'") (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488 (1989) and *EEOC v. Waffle House, Inc.* 534 U.S. 279, 294, 122 S.Ct. 754, 764, 151 L.Ed.2d 755 (2002)). Thus, arbitration agreements are "'as enforceable as other contracts, but not more so.'" *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 1806 n. 12, 18 L.Ed.2d 1270 (1967)). Here, Bayer does not dispute that it has no contractual relationship with the plaintiffs, and does not show that it ever independently sought an agreement to arbitrate disputes with them.

Rather, Bayer claims that it is an intended third party beneficiary of the at-will employment relationship plaintiffs had with Brock. It relies upon the language in Brock's dispute resolution agreement that states that a Brock employee must submit any dispute he has with a Brock customer to arbitration. It is undisputed that Bayer is one of Brock's customers, as the DRA defines the term. It is also plain that the plaintiffs' underlying suit is a "claim[ ] against Employer's customer[ ]," which is among the claims "include[d]" in the DRA. The issue that remains is whether Bayer has the right to enforce the contract, pursuant to language that the "Company and Applicant ... agree that the procedures set forth herein shall be the sole and exclusive legal process available for resolving ... all claims ... between or among them, and also between or among all other persons named, described, referred to and/or stated anywhere in this agreement." Un-

der contract principles, we conclude that this language is insufficient to confer upon Bayer a third party contractual right of enforcement against Brock's employees, the plaintiffs in this case.

■ First, the presumption in contract law is against finding that a stranger to a contract is a third party beneficiary, so as to confer legal standing to enforce the contract's stated obligations, even if the contract expressly states that one of the signatories may have obligations to that stranger. *MCI Telecomm. Corp. v. Tex. Util. Elec. Co.,* 995 S.W.2d 647, 652 (Tex.1999). A party is presumed to contract only for its own benefit; any intent to benefit a third party must be clearly apparent. *Id.; see also M.J.R. Corp. v. B & B Vending Co.,* 760 S.W.2d 4, 12 (Tex. App.-Dallas 1988, writ denied); *Greenway Park Townhomes Condo. Ass'n, Inc. v. Brookfield MUD,* 575 S.W.2d 90, 91 (Tex. Civ.App.-Houston [14th Dist.] 1978, no writ). Any doubt concerning intent should be resolved against the third party. *Greenway,* 575 S.W.2d at 91. As the Texas Supreme Court has instructed, "court[s] will not create a third-party beneficiary contract by implication." *MCI,* 995 S.W.2d at 651.

■ Under Texas law, to sue as a third-party beneficiary, a claimant must show (1) the obligation to the third party is fully developed, (2) the contracting parties unmistakably contemplated benefitting the claimant, and (3) the contract vests in the claimant the right to sue to enforce the contract. *Prospect High Income Fund v. Grant Thornton, L.L.P.,* 203 S.W.3d 602, 610 (Tex.App.-Dallas 2006, pet. filed). "The fact that a person is directly affected by the parties' conduct, or that he may have a substantial interest in a contract's enforcement, does not make him a third party beneficiary.'" *Loyd v. ECO Res.,*

*Inc.*, 956 S.W.2d 110, 134 (Tex.App.-Houston [14th Dist.] 1997, no writ). In this case, the DRA does not name Bayer to be a beneficiary under the contract, or express that Bayer (or any customer) has the right to enforce it. Bayer presents no evidence showing that the DRA is intended to confer upon Bayer the right to sue to enforce the contract. Thus, the contract language in the DRA does not overcome the presumption against vesting a right of enforcement in a non-signatory.

Second, Bayer did not prove that it was either a donee or a creditor beneficiary of Brock's agreement with its employees or the DRA. To qualify as an intended third-party beneficiary, the party must show that it is not merely incidentally benefitted by the performance of the contract. *MCI Telecomm.*, 995 S.W.2d at 651. A donee beneficiary is a party to whom the performance promised, when rendered, will come to as a pure donation; a creditor beneficiary is one to whom the performance promised will come in satisfaction of a legal duty owed by the promisee. *Id.* This legal duty may include indebtedness, contractual obligations, or other legally enforceable commitments owed the third party. *Id.* To qualify as a creditor beneficiary, the maker of the contract (here, Brock) must not only have intended to confer a benefit upon the third party (Bayer), but it also must have intended for the third-party to have the right to enforce the agreement. *See MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 16 (Tex.App.-Dallas 1988, writ denied). Unless the agreement expresses both intents, the third party remains no more than an incidental beneficiary. *Id.* On this record, Bayer does not attempt to show that Brock had any legal obligation to Bayer to require Brock employees to arbitrate disputes they might have with Bayer, or that including Bayer in the DRA

was necessary to satisfy any legal duty. Bayer does not maintain, for example, that it required contractor employees to execute arbitration agreements as a condition of entry onto its premises, or of providing scaffolding and painting services to it. Without more, Bayer's relationship with Brock as one of its customers is insufficient to confer the right to enforce the agreement Brock made with its employees. *Cf. In re Merrill Lynch*, 50 Tex. Sup.Ct. J. 1030, 235 S.W.3d at 192 (declining to enforce arbitration against non-signatory corporate affiliates, holding that "[a] corporate relationship is generally not enough to bind a nonsignatory to an arbitration agreement."). Bayer is merely an incidental beneficiary of the DRA.

Third, the plaintiffs sue Bayer for personal injuries sustained from an explosion at the Bayer plant, not for the enforcement of any right that may inure to them by virtue of their employment relationship with Brock. Bayer has an independent duty in tort to exercise ordinary care with respect to its activities, or a similarly independent duty with respect to its role as a premises owner—neither of these exists only for people who are Brock employees. A stranger to Brock could nonetheless assert a claim for personal injuries against Bayer if Bayer caused those injuries by its failure to exercise ordinary care—the duty arises solely in tort, without any contractual underpinning. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contrs.*, 960 S.W.2d 41, 45 (Tex.1998) (to determine whether a cause of action arises in contract or tort, courts consider "both the source of the defendant's duty to act (whether it arose out of the contract or from some common-law duty) and the nature of the remedy sought by the plaintiff.") (citing *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 12 (Tex.1996)). Neither the source of Bayer's duty nor the plaintiffs' remedy arise,

even in part, from the employment application that these plaintiffs signed. *See id.*

In seeking to compel arbitration, Bayer relies on the Texas Supreme Court's decision in *Palm Harbor Homes. In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672 (Tex. 2006). There, a mobile home manufacturer sought to compel arbitration for defect claims brought by the purchasers, who had signed an agreement to arbitrate as part of their sales contract with the mobile home retailer. *Id.* The manufacturer was specifically named in the agreement as a party to the arbitration agreement. *Id.* ("The agreement specified that it inured to the benefit of the manufacturer and a twenty-day period during which it could opt out of arbitration."). The agreement further recited that the manufacturer was bound to it (subject to a twenty-day opt-out provision). *Id.* In addition, the claims asserted against the manufacturer undisputedly arose from the existence of the contract to buy the mobile home. *Id.* at 675 (noting that the purchasers' claims were breach of contract, breach of warranty, and statutory liability under the Residential Construction Liability Act). In those circumstances, the Texas Supreme Court concluded that the manufacturer was an intended third party beneficiary to the contract. *Id.* at 677.

In contrast, nothing in the Brock agreement specifically identifies Bayer as an intended beneficiary beyond the language that disputes with customers are "include[d]." Unlike the agreement in *Palm Harbor Homes,* the DRA does not state that it "inure[d] to the benefit" of Bayer. *See id.* The DRA does not recite that Bayer, too, must use arbitration to resolve any dispute it might have with the plaintiffs, or in any way obligates Bayer to do so. It does not expressly confer upon Bayer the right to enforce the agreement. And, unlike the purchasers in *Palm Harbor Homes,* who sought recovery based upon the transaction memorialized in the retail sales contract, none of the plaintiffs' claims against Bayer here arise from their at-will employment relationship with Brock, or through the employment applications that they signed. Accordingly, under the facts of this case, Bayer's inclusion as a customer in the agreement to arbitrate creates an incidental benefit to Bayer, and not an obligation legally enforceable by Bayer, a non-signatory to the contract, against the plaintiffs.

## Conclusion

Bayer did not prove that it was either a signatory or an intended third party beneficiary to the at-will employment dispute resolution agreements the plaintiffs signed with their employer, Brock. The trial court therefore did not abuse its discretion in denying Bayer's motion to compel arbitration of the plaintiffs' claims against Bayer for personal injuries sustained in a plant explosion. Accordingly, we deny Bayer's request for mandamus relief from the trial court's ruling. All pending motions are denied as moot.

Chief Justice RADACK, dissenting without opinion.