

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## NUMBER 13-08-00547-CV

HARTFORD LIFE INSURANCE COMPANY, ET AL.,       Appellants,

v.

MICHAEL FORMAN, INDIVIDUALLY AND
MICHAEL FORMAN, M.D., P.A.,       Appellees.

On Appeal from the 197th District Court of Cameron County, Texas.

## NUMBER 13-08-00603-CV

## IN RE: HARTFORD LIFE INSURANCE COMPANY, ET AL.

On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

Before Justices Yanez, Garza, and Vela
Memorandum Opinion by Justice Vela

Hartford Life Insurance Company, Jan Mohamed, and King, Mohamed & Associates, Inc., have brought a petition for writ of mandamus in cause number 13-08-00547-CV, and an interlocutory appeal in cause number 13-08-00603-CV challenging the trial court's denial of their motions to compel arbitration. We dismiss the appeal and deny the petition for writ of mandamus as stated herein.

## I. BACKGROUND

Michael Forman and Michael Forman, M.D., P.A. (collectively "Forman") contracted with Jan Mohamed and King, Mohamed & Associates, Inc. (collectively "Mohamed") to provide financial services. Mohamed represented himself as a financial planner who could design a conservative and legal financial plan that would offer Forman significant tax benefits. Mohamed advised Forman to invest in a single employer benefit plan (the "Plan") that qualified under section 419(e) of the Internal Revenue Code. Mohamed represented that the contributions to this Plan were tax-deductible and that Forman did not have to enroll his medical office employees in the Plan. Niche Marketing, Inc. ("Niche") prepared the agreement whereby Forman adopted the Plan. The Plan was funded by life insurance policies that were allegedly analyzed and underwritten by Hartford Life Insurance Company ("Hartford"). Niche Plan Sponsors, Inc. is the "Trust Administrator" for the Plan, and Wells Fargo Bank, N.A., is the Trustee under the Plan.[1] Forman, Mohamed, and Niche discussed the Plan numerous times.

After inception of the Plan, Forman discovered that the Plan did not work as Mohamed had represented. Forman found that he was required to enroll his medical office

---

[1] Neither Niche Plan Sponsors, Inc. nor Wells Fargo were named as parties in the underlying lawsuit.

2

employees in the Plan, thereby incurring substantial costs. Moreover, the Internal Revenue Service audited the Plan and ruled that the Plan was an illegal tax shelter, requiring Forman to pay a substantial amount in unpaid taxes, plus penalties and interest.

Forman brought suit against Mohamed, Niche, and Hartford for fraud, fraudulent inducement, negligent misrepresentation, negligence, breaches of the insurance code and the deceptive trade practices act, and breach of contract. Mohamed and Hartford moved to compel arbitration based on an arbitration clause contained in Forman's agreement with Niche Plan Sponsors, Inc. Forman settled with Niche, and filed an amended petition against the remaining defendants.

The arbitration clause at issue is contained in the "Adoption Agreement" between Forman and Niche Plan Sponsors, Inc. Specifically, the acknowledgment and disclosure section of the Plan provides that "[a]ny unresolved disputes or claims involving this Plan will be settled by arbitration conducted by the American Arbitration Association in California." Forman had separate contracts with Hartford and Mohamed which did not contain arbitration clauses.

Hartford and Mohamed moved to compel arbitration based on the arbitration clause contained in the Adoption Agreement. The trial court denied the motion to compel, and these proceedings ensued.

## II. FEDERAL ARBITRATION ACT OR TEXAS ARBITRATION ACT

The trial court's order denying the motion to compel arbitration did not specify whether the arbitration agreement in this case was governed by the Federal Arbitration Act ("FAA") or the Texas Arbitration Act ("TAA"). *See* 9 U.S.C. §§ 1-16 (1999) (FAA); TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001-.098 (Vernon 1997 and Supp. 2008) (TAA).

3

Therefore, Hartford and Mohamed seek review of the order denying arbitration both by mandamus and interlocutory appeal. *See Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992) (providing that litigants alleging entitlement to arbitration under the FAA and TAA must pursue parallel proceedings).

The FAA "extends to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach." *L & L Kempwood Assocs., L.P. v. Omega Builders, Inc. (In re L & L Kempwood Assocs., L.P.)*, 9 S.W.3d 125, 127 (Tex. 1999) (per curiam) (combined appeal & orig. proceeding); *see In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005) (orig. proceeding); *see also* 9 U.S.C. § 2 (2005). "Commerce" has been broadly defined and encompasses contracts relating to interstate commerce. *See In re Gardner Zemke Co.*, 978 S.W.2d 624, 626 (Tex. App.–El Paso 1998, orig. proceeding). The FAA does not require a substantial effect on interstate commerce; rather, it requires commerce to be involved or affected. *See L & L Kempwood Assocs., L.P.,* 9 S.W.3d at 127.

In the instant case, the parties to the agreement at issue are from different states. Niche is a California corporation, and Forman is a Texas individual and professional association. *See id.* at 126-27 (finding interstate commerce when parties to contract reside in different states). Hartford, which is not a signatory to the agreement, is a foreign corporation that is licensed to do business in Texas. Mohamed, also not a signatory to the agreement, is a Texas resident and Texas corporation. The dispute at issue concerns alleged misrepresentations regarding the propriety, legality, and financial effects of the implementation of an employee welfare benefit plan in accordance with the Internal

Revenue Code and the adoption of a "collective" and "[n]ational" trust to fund the plan's benefits therein. The "Trustee" for the Plan is a bank which is not a party to these proceedings. Forman does not challenge the application of the FAA to the agreement. Under these circumstances, we conclude that the agreement evidences a transaction involving interstate commerce. *Cf. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wilson*, 805 S.W.2d 38, 39 (Tex. App.–El Paso 1991, no writ) (holding that securities account agreement is contract for purpose of trading securities and clearly involves commerce within scope of Federal Arbitration Act). Therefore, the agreement at issue is subject to the FAA.

When a trial court erroneously denies a motion to arbitrate under the FAA, mandamus is the appropriate remedy. *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002) (orig. proceeding); *see* 9 U.S.C.A. § 4 (2005) (providing, in part, that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement"); *Nabors Drilling USA, LP v. Carpenter*, 198 S.W.3d 240, 246 (Tex. App.–San Antonio 2006, orig. proceeding). Accordingly, we dismiss the interlocutory appeal and consider the merits of the petition for writ of mandamus.

III. STANDARD OF REVIEW

To be entitled to mandamus relief, a petitioner must show that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding) (citing

5

*Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)); *see In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 2008 Tex. LEXIS 5759, at *6 (Tex. Aug. 29, 2008) (orig. proceeding). We may not substitute our judgment for that of the trial court with respect to the resolution of factual issues or matters within the trial court's discretion. *Walker*, 827 S.W.2d at 839-40. The relator must show that the trial court could reasonably have reached only one decision. *Id.* The reviewing court cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* With respect to the trial court's decision on legal issues, our review is much less deferential. *Id.* at 840. A trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

## IV. VALIDITY AND SCOPE

A party seeking to compel arbitration by a writ of mandamus must (1) establish the existence of a valid agreement to arbitrate under the FAA, and (2) show that the claims in dispute are within the scope of the agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "Whether a valid arbitration agreement exists is a legal question subject to de novo review." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). In determining the validity of agreements to arbitrate which are subject to the FAA, we generally apply state-law principles governing the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). If the trial court finds there is a valid agreement to arbitrate, the burden shifts to the party

6

opposing arbitration to prove his defenses. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

Once a valid agreement to arbitrate has been established, the court must then determine whether the arbitration agreement covers the nonmovants' claims. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). To determine whether an existing arbitration agreement covers a party's claims, a court must "focus on the complaint's factual allegations rather than the legal causes of action asserted." *Id.* at 754. Federal policy embodied in the FAA favors agreements to arbitrate, and courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *Id.* at 753. If the arbitration agreement encompasses the claims and the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings. *Id*. at 753-54; *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 866-67 (Tex. App.–Houston [14th Dist.] 2006, no pet.); *Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp.*, 140 S.W.3d 879, 883 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

## V.  AGREEMENT TO ARBITRATE

"Courts may not order parties to arbitrate unless they have agreed to do so." *In re Golden Peanut Co., LLC*, 269 S.W.3d 302, 307 (Tex. App.–Eastland 2008, orig. proceeding); *Belmont Constructors, Inc. v. Lyondell Petrochemical Co.*, 896 S.W.2d 352, 356-57 (Tex. App.–Houston [1st Dist.] 1995, no writ) (combined appeal & orig. proceeding); *see Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994) ("While courts may enforce agreements to arbitrate disputes, arbitration cannot be ordered in the absence of such an

7

agreement."). Therefore, despite strong presumptions that favor arbitration, a valid agreement to arbitrate remains a settled, threshold requirement to obtaining relief, whether under the TAA or the FAA. *See Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737-38 (analyzing the FAA); *J.M. Davidson, Inc.*, 128 S.W.3d at 227 (analyzing the TAA). We keep in mind that a purpose of the FAA is "to make arbitration agreements as enforceable as other contracts, but not more so." *In re Labatt Food Serv., L.P.*, No. 07-0419, 2009 Tex. LEXIS 28, at *3-5 (Tex. Feb. 13, 2009) (orig. proceeding) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)); *see Kellogg Brown & Root, Inc.*, 166 S.W.3d at 738.

## VI. NONSIGNATORIES

The initial burden of establishing the existence of an arbitration agreement includes proving that the party seeking to enforce the agreement was a party to the agreement or otherwise had the right to enforce it. *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836 (Tex. App.–Houston [1st Dist.] 2002, no pet.) (combined appeal & orig. proceeding). It is undisputed that Mohamed, his firm, King, Mohamed & Associates, Inc., and Hartford are neither signatories nor parties to the contract between Forman and Niche Plan Sponsors, Inc.

Under the FAA, whether an arbitration agreement binds a nonsignatory is a gateway matter to be determined by courts rather than arbitrators unless the parties clearly and unmistakably provide otherwise. *Labatt Food Serv., L.P.*, 2009 Tex. LEXIS 28, at *3-5; *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding); *see Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). When the arbitration

agreement is silent about who is to determine whether particular persons or entities are bound by the agreement, courts, rather than the arbitrator, should determine the issue. *Labatt Food Serv., L.P.*, 2009 Tex. LEXIS 28, at *3-5. We apply Texas procedural rules in determining whether nonsignatories are bound by an arbitration agreement. *See id.*; *Weekley Homes*, 180 S.W.3d at 130. We apply state substantive law and endeavor to keep it consistent with federal law in determining whether nonsignatories are bound to arbitrate under an agreement subject to the FAA.

Nonsignatories or nonparties to an agreement containing an arbitration clause may be bound by the provisions of the clause "when the rules of law or equity would bind them to the contract generally." *Weekley Homes*, 180 S.W.3d at 129. Federal arbitration law recognizes several theories of contract and agency law that authorize binding a nonsignatory to an arbitration agreement. *See Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739. A "contract theory" must tie the nonsignatory to the arbitration provisions sought to be enforced. *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 187, 194 (Tex. 2007) (orig. proceeding).

Relators invoke the two following, contract-based theories in seeking to compel arbitration: (1) that Forman was equitably estopped from contesting applicability of the arbitration clause in its contract with Niche; and (2) that relators were third-party beneficiaries of that contract. *See id.* at 193 (addressing equitable estoppel theory of enforcement); *Palm Harbor Homes, Inc.*, 195 S.W.3d at 677 (addressing third-party beneficiary theory of enforcement).

9

A. EQUITABLE OR "DIRECT BENEFITS" ESTOPPEL

Under the "equitable estoppel" doctrine, when a nonsignatory to a contract that contains an arbitration provision sues on the contract and seeks a direct benefit from the contract, the nonsignatory is estopped to deny enforceability of the arbitration provision of the contract that the signatory seeks to enforce. *See In re U.S. Home Corp.*, 236 S.W.3d 761, 765 (Tex. 2007) (orig. proceeding); *Merrill Lynch*, 235 S.W.3d at 191; *Weekley Homes*, 180 S.W.3d at 131-32; *Kellogg Brown & Root Inc.,* 166 S.W.3d at 739; *see also Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 307 (Tex. 2006); *FirstMerit Bank*, 52 S.W.3d at 755. The doctrine also applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. *See Meyer*, 211 S.W.3d at 306 (citing *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000)); *Trammell v. Galaxy Ranch Sch., L.P. (In re Trammell)*, 246 S.W.3d 815, 821 (Tex. App.–Dallas 2008, no pet.) (combined appeal & orig. proceeding). When each of a signatory's claims against a nonsignatory references or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. *Meyer*, 211 S.W.3d at 306; *see Grigson*, 210 F.3d at 527. When a party's right to recovery and damages depend on the agreement containing the arbitration provision, the party is relying on the agreement for its claims. *See Meyer*, 211 S.W.3d at 307.

The doctrine does not apply, however, when the claimed benefits are "insubstantial" or "indirect," *see Weekley Homes*, 180 S.W.3d at 134, or when the claim merely "relates" to the contract. *Kellogg Brown & Root, Inc.,* 166 S.W.3d at 741. Claims by a nonsignatory

10

that "can stand independently of the underlying contract" should generally not be arbitrated. *See id.* at 739-40. Moreover, arbitration cannot be compelled based solely on substantially interdependent and concerted misconduct. *See Merrill Lynch*, 235 S.W.3d at 191; *Trammell,* 246 S.W.3d at 821. Further, equitable estoppel cannot give nonsignatories a greater right to arbitration than the signatories themselves have. *See Meyer*, 211 S.W.3d at 306.

Through an "Adoption Agreement," Forman adopted the Plan to provide benefits to certain employees and adopted a collective trust, known as the "National Benefit Trust I," to fund the Plan. Under the agreement, Mohamed and his firm were appointed "to serve with the Trust Administrator on the Severance Committee." Forman agreed to indemnify "the Trust Administrator, Trustee, and Insurer" and their agents and representatives for specified activities pursuant to the Plan or Trust. Forman further agreed that he adopted the Plan and Trust only after "seeking the advice of independent counsel" and that he did not rely on the "Trust Administrator, Trustee, or Insurer" with respect to tax advice. The arbitration clause is in a separate document, which also provides that "The Insurance Carrier will be responsible solely for the promises contained in its insurance contracts." There is another separate document, the "Fixed Premium Acknowledgment," signed by Mohamed, warning Forman that the premiums due on the life insurance policies were not flexible and the policies would lapse if untimely paid. Based on the record presented to the Court, Hartford is not identified as the "Insurer" or the "Insurance Carrier" in the agreement or attachments thereto, and Mohamed is not mentioned in any other capacity than as serving on the "Severance Committee."

11

In the instant case, based on the testimony herein, both Hartford and Mohamed had separate contracts with Forman which did not contain arbitration clauses. To allow Hartford and Mohamed to compel arbitration with Forman would allow them to effectively rewrite their contracts. *Merrill Lynch Trust Co. FSB*, 235 S.W.3d at 191 ("Those affiliates signed their own contracts with the plaintiffs, which had no arbitration clauses. As allowing these affiliates to compel arbitration would effectively rewrite their contracts, we hold they cannot."). Moreover, Forman's claims against Hartford and Mohamed do not rely upon the Niche contract. *See Meyer*, 211 S.W.3d at 307. Forman does not seek the benefits of the Niche contract against Hartford or Mohamed or otherwise invoke any obligation arising under the Niche contract. Accordingly, we conclude that relators cannot invoke equitable estoppel to compel arbitration of Forman's claims against them.

### B. THIRD-PARTY BENEFICIARIES

Relators also contend that they can enforce the Niche arbitration clause because they are third-party beneficiaries of the Niche contract. A stranger to a contract may enforce the contract as a third-party beneficiary if the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit. *Palm Harbor Homes, Inc.*, 195 S.W.3d at 677; *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002); *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999); *In re Citgo Petroleum Corp.*, 248 S.W.3d 769, 775 (Tex. App.–Beaumont 2008, orig. proceeding). A party is presumed to contract only for its own benefit; thus, any intent to benefit a third party must be clearly apparent. *MCI Telecomms. Corp.*, 995 S.W.2d at 652; *In re Bayer Materialscience, LLC*, 265 S.W.3d 452, 456 (Tex.

App.–Houston [1st Dist.] 2007, orig. proceeding).  There is a presumption against, not in favor of, third-party beneficiary agreements.  *MCI Telecomms. Corp.*, 995 S.W.2d at 652; *In re SSP Partners*, 241 S.W.3d 162, 170 (Tex. App.–Corpus Christi 2007, orig. proceeding).

In this case, the Niche agreement does not name Mohamed or Hartford as parties to the agreement or as beneficiaries under the contract, nor does it otherwise express that they have any right to enforce it.  The agreement does not require Mohamed or Hartford to arbitrate claims arising under the agreement.  Mohamed and Hartford have presented no evidence showing that the Niche agreement is intended to confer upon them the right to sue to enforce the contract.  Thus, the contract language does not overcome the presumption against vesting a right of enforcement in a nonsignatory.  *See Bayer Materialscience, LLC*, 265 S.W.3d at 456.  Accordingly, we conclude that Hartford and Mohamed do not qualify as third party beneficiaries to the contract and cannot enforce its arbitration clause.

## VII.  CONCLUSION

We conclude that the trial court did not err in refusing to order the underlying matter to arbitration.  We dismiss the interlocutory appeal in cause number 13-08-00547-CV.  We deny the petition for writ of mandamus in cause number 13-08-00603-CV.  *See* TEX. R. APP. P. 52.8(a).

ROSE VELA
Justice

Memorandum Opinion delivered and
filed this 3rd day of June, 2009.

13