Opinion issued March 29, 2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00503-CV

———————————

ConocoPhillips Company, Appellant

V.

Tonia Graham
and Mindy Dicus,
Appellee



 



 

On Appeal from the 157th District Court

Harris County, Texas



Trial Court Case No. 1060385

 



 

MEMORANDUM OPINION

          This
is an interlocutory appeal from the trial court’s order denying ConocoPhillips
Company’s motion to compel arbitration. In its sole issue, ConocoPhillips
contends that it is a third-party beneficiary entitled to enforce arbitration
agreements between its contractor and the contractor’s employees in this suit
brought by the employees against it for injuries allegedly sustained while
providing services at its refinery. We hold that ConocoPhillips is a third-party
beneficiary entitled to enforce the arbitration agreements and that the
employees’ claims fall within the agreements’ scope. We therefore reverse the
trial court’s order and remand to the trial court with instruction to compel
arbitration of Graham and Dicus’s claims against ConocoPhillips.

Background

          ConocoPhillips
operates a petroleum refinery in Borger, Texas. It hired J.V. Industrial
Companies, Ltd. (JVIC) to perform fabrication work at the refinery. The
relationship between ConocoPhillips and JVIC is governed by a master services
agreement. Under the agreement, ConocoPhillips and JVIC agree to indemnify each
other for certain claims. Among them, JVIC agrees to indemnify ConocoPhillips
for claims filed against it by JVIC employees, up to a maximum of $10 million
per occurrence. This agreement also contains an arbitration agreement covering
certain claims between ConocoPhillips and JVIC. It further assigns JVIC sole
responsibility for the “work safety” of its employees, requiring that JVIC
perform routine safety inspections and adopt and train its employees in safety
procedures.

JVIC also has arbitration
agreements with its employees, including Tonia Graham and Mindy Dicus.Graham
and Dicus each signed an “Arbitration Agreement/Policy,” in which they agreed
to arbitrate certain claims “[a]s a condition for reviewing your application
for employment and/or as a condition of employment with [JVIC] . . . .” In
these agreements, JVIC and Graham or Dicus agreed to “submit any claim covered
by [the] agreement to binding arbitration” and that such arbitration will be
“the sole and exclusive remedy for resolving” such claims or disputes. The
agreement covers: 

all claims and/or disputes between
and among all Applicants/ Employees and JVIC, and all disputes between and
among Applicants/Employees and JVIC’s subcontractors, contractors, clients,
vendors, facility owners where Applicant/Employee performs services for JVIC,
and each of their subsidiaries, affiliates, parents, employees, agents, and any
other person or entity who has signed this or a similar agreement or otherwise
agreed to use arbitration to settle claims or disputes that may arise,
including, by way of example, disputes arising from or concerning: . . .

 

(5)
  Any other claim for personal, emotional,
physical, or economic injury.

 

The only disputes which are not included within this
mutual agreement to arbitrate are:

 

(1)       Claims by Applicant/Employee
for workers’ compensation or unemployment compensation benefits . . .

 

(2)       Claims against
Applicant/Employee for injunctive relief . . . .

 

(emphasis in original).

Graham and Dicus were working for
JVIC at ConocoPhillips’s Borger facility when a steam header ruptured, causing
ConocoPhillips to evacuate the refinery. Graham and Dicusassert that they were injured
during the evacuation. When Graham and Dicus sued ConocoPhillips, JVIC assumed
ConocoPhillips’s defense and agreed to indemnify ConocoPhillips pursuant to the
master service agreement. ConocoPhillips then moved to compel arbitration of
Graham and Dicus’s claims against it on the ground that it is a third-party
beneficiary to their arbitration agreements with JVIC. Graham and Dicus
contested ConocoPhillips’s right to enforce their arbitration agreements with
JVIC. The trial court denied the motion to compel arbitration, which
ConocoPhillips appeals.

Standard of Review and Burdens of Proof

          The
arbitration agreements signed by Graham and Dicus expressly invoke the Federal
Arbitration Agreement.[1]See In
re Rubiola, 334 S.W.3d 220, 223
(Tex. 2011)(orig. proceeding) (stating that parties may expressly agree to
arbitrate under FAA); In re Kellogg Brown & Root, 80 S.W.3d 611, 617
(Tex. App.—Houston [1st Dist.] 2002, orig. proceeding) (holding that when
parties expressly agree to arbitrate under FAA, they are not required to
demonstrate transaction involving or affecting interstate commerce). Under the
FAA, a party may apply for an order compelling arbitration of claims governed
by a valid arbitration agreement. Id.;
9 U.S.C. § 4 (West 2008). An order denying such a motion to compel arbitration
is reviewable by interlocutory appeal. Tex.
Civ. Prac. & Rem. Code Ann.§ 51.016 (West Supp. 2011); 9 U.S.C. §
16(a)(1)(B); see In re Merrill Lynch
& Co., Inc., 315 S.W.3d 888, 891 n.3 (Tex. 2010) (orig. proceeding).

A party seeking to compel arbitration under the FAA must
establish (1) the existence of a valid, enforceable arbitration agreement and
(2) that the claims at issue fall within that agreement’s scope. In re
Kellogg Brown & Root, Inc.,
166 S.W.3d 732, 737 (Tex.2005) (orig. proceeding); In re Provine, 312
S.W.3d 824, 828 (Tex. App.—Houston [1st Dist.] 2009)(orig. proceeding).If the
movant establishes that an arbitration agreement governs the dispute, the
burden shifts to the party opposing arbitration to establish a defense to the
arbitration agreement. In re Provine,
312 S.W.3d at 829 (citing In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex.1999)
(orig. proceeding)). Once the arbitration movant establishes a valid
arbitration agreement that encompasses the claims at issue, a trial court has
no discretion to deny the motion to compel arbitration unless the opposing partyproves
a defense to arbitration. Id. (quoting
In re FirstMerit Bank, N.A., 52 S.W.3d 749, 753–54 (Tex. 2001)(orig.
proceeding)). Because state and
federal policies favor arbitration, courts must resolve any doubts about an
arbitration agreement’s scope in favor of arbitration.In re FirstMerit Bank,
N.A., 52 S.W.3d at 753.

Generally, we review a trial court’s decision to grant or
deny a motion to compel arbitration under an abuse of discretion standard. Okorafor
v. Uncle Sam & Assocs., Inc., 295 S.W.3d 27, 38 (Tex. App.—Houston [1st
Dist.] 2009, pet. denied). Under this standard, we defer to a trial court’s
factual determinations if they are supported by evidence, but we review a trial
court’s legal determinations de novo. In
re Labatt Food Serv., L.P., 279 S.W.3d 640, 643 (Tex. 2009) (orig.
proceeding); see also In re D. Wilson Constr. Co., 196 S.W.3d 774, 780 (Tex. 2006)
(orig. proceeding). Whether a valid arbitration agreement exists and whether
the arbitration agreement is ambiguous are questions of law that we review de
novo. In re D. Wilson Constr., 196
S.W.3d at 781. The primary issue here is whether ConocoPhillips, which is not a
party to Graham and Discus’s arbitration agreements, may enforce those
agreements against them. Whether a non-signatory can compel arbitration
pursuant to an arbitration agreement is an issue that goes to the existence of
a valid arbitration agreement between parties; we will therefore review that
determination de novo. See In re Rubiola, 334 S.W.3d at 224;
In re Weekley Homes, L.P., 180 S.W.3d
127, 130 (Tex. 2005)(orig. proceeding). 

Valid, Enforceable Arbitration
Agreements

Under the FAA, state contract law governs issues of
validity, revocability, and enforceability of an arbitration agreement. Arthur Andersen L.L.P. v. Carlisle, 556
U.S. 624, 129 S. Ct. 1896, 1902 (2009); see
also In re Rubiola, 334 S.W.3d at 224. Thus, ConocoPhillips is entitled to
enforce Graham’s and Dicus’s arbitration agreements as a third-party
beneficiary if it qualifies as such under Texas contract law. See Arthur Andersen, 129 S. Ct. at 1902.
Texas courts of appeals have issued several recent opinions applying the third-party
beneficiary analysis in the context of enforcement of an arbitration agreement.
We begin this analysis by reviewing these cases, which shed light on the
outcome here.

A.      Pertinent
case law

Graham and Dicus rely heavily on this Court’s rejection of
an attempt to enforce an arbitration clause by a purported third-party
beneficiary in In re Bayer
Materialscience, L.L.C., 265 S.W.3d 452, 454–56 (Tex. App.—Houston [1st
Dist.] 2007) (orig. proceeding). Bayer
is factually similar to this case in many ways. Like this case, employees of an
independent contractor, Brock, sued a plant owner, Bayer, to recover for
injuries sustained at the plant. Id.
at 454. Also like this case, there was an arbitration agreement between the
plaintiffs-employees and their employer, Brock. Bayer moved to compel
arbitration, contending that it was a third-party beneficiary to the employees’
arbitration agreements. Id. The
arbitration agreements contained language similar, but not identical, to that
at issue here. They required the employees to arbitrate:

each, every, any and all claims, disputes or controversies
between or among [the employee and employer], and also between or among all
other persons named, described, referred to and/or stated anywhere in this
agreement. Those claims, disputes and controversies shall include, but are not
limited to, . . . all claims, disputes and controversies with or against [the
employer’s] customers, clients and/or any other person(s) under contract with
[the employer], including . . . the owner(s) of any and all property upon which
and/or with which [the employee] may or has performed any work or services for
or on behalf of any person.

 

Id. 

It was undisputed that Bayer was a “customer” of Brock and
was also the owner of the property where the accident occurred. Id. at 456. But this language, alone,
was not sufficient to “confer upon Bayer a thirdparty contract right of
enforcement” against the employees. Id. Noting
that Bayer had to overcome the legal presumption that a party is presumed to
contract only for its own benefit and that neither Bayer’s duty to the
employees nor the employees’ remedy against Bayer arose out of their contracts
with Brock, we held Bayer was not a third-party beneficiary to the arbitration
agreements. Id. at 457–58. 

ConocoPhillips relies heavily on a decision from the
Beaumont Court of Appeals in which the court, a few months after Bayer, faced a similar fact patternbut
reached a different result. In re Citgo
Petro. Corp., 248 S.W.3d 769 (Tex. App.—Beaumont 2008, orig. proceeding).
Similar to thiscase, an employee of a contractor sued the property owner,
Citgo, forinjuries suffered on the job at a refinery. Id.at 763.The contractor, Pat Tank, and its employee had entered
into an arbitration agreement similar to the one at issue in Bayer and here. Id. The agreement obligated the parties to arbitrate “all claims or
disputes between and among Employee, [the contractor], and [the contractor’s]
customer[s], and clients . . . and any other person or entity that has
signed this or [a] similar agreement or otherwise agreed to use mediation
and/or arbitration to settle any claims or disputes that may arise between
them.” Id. at 773­−74. Like
Bayer, Citgo was a client of the contractor-employer, Pat Tank. Id. at 774. 

In holding that Citgo was an intended third-party
beneficiary to Pat Tank’s contract with its employee, the Beaumont court
distinguished Bayeron the basis of
Pat Tank’s indemnity obligation to Citgo. Id.
at 776–777. Unlike in Bayer, the
record in Citgo contained Pat Tank’s
contract with Citgo, which required it to indemnify Citgo for damages,
including arbitrator’s fees, arising out of claims filed by its employees
against Citgo. Id. at 777. The court
observed that Pat Tank’s contractual obligation to indemnify Citgo “suggests
one reason Pat Tank would intend to give Citgo the right to enforce the
arbitration agreement between Pat Tank and [its employee]” because the
employee’s claim “may ultimately, though indirectly, be paid by Pat Tank under
the indemnity contract.” Id. The
court concluded that these circumstances indicated “an intent to give Citgo the
benefit of [the employee’s] promise to arbitrate.” Id. 

The Citgo court
held that another party, Stoneburner, was not a third-party beneficiary to Pat
Tank’s arbitration agreement with its employee. Although Stoneburner contended
that it was a “vendor” under the agreement, it produced no other evidence
regarding the parties’ intent to confer a benefit upon it. The court observed,
“The fact that the dispute resolution agreement includes non-signatory vendors
within its sweep does not, without more, demonstrate Stoneburner’s status as an
intended third-party beneficiary.” Id.
(citing Bayer, 265 S.W.3d at
457–58).Thus, like Bayer, the court
found that a generic description of a type of party covered by the employee’s
arbitration agreement with his employer did not, standing alone, conferthird-party
beneficiary status on the party that fell within that description. 

          ConocoPhillips also relies on a post-Bayer decisionby the Texas Supreme Court
in which it held that a party was entitled to enforce another party’s
arbitration agreement with the claimant as a third-party beneficiary. See In re NEXT Fin. Grp., 271 S.W.3d
263, 267 (Tex. 2008) (orig. proceeding). In NEXT
Financial, a securities brokerage firm sought to enforce an arbitration
agreement between its employee and the National Association of Securities
Dealers (NASD). Id. at 265. In his
agreement with the NASD, the employee agreed to “arbitrate any dispute, claim
or controversy that may arise between me and my firm . . . that is required to
be arbitrated under the rules, constitutions, or bylaws of [the NASD.]” Id. Without further discussion, the
Texas Supreme Court held that the brokerage firm was “a clearly intended” third-party
beneficiary of the employee’s agreement with the NASD and could “compel
arbitration in accordance with the terms of that agreement, even though NEXT is
not a signatory to [it].” Id. at 267
(citing In re Prudential Ins. Co. of Am.
Sales Practice Litig., 133 F.3d 225, 230 (3rd Cir. 1998)) (holding that
employer was intended third-party beneficiary of NASD arbitration agreement); cf. In re Palm Harbor Homes, Inc., 195
S.W.3d 672, 677 (Tex. 2006) (orig. proceeding) (holding that intended third-party
beneficiary of arbitration agreement could compel arbitration)). 

The Third Circuit case cited by the Texas Supreme Court in NEXTFinancial held that the NASD’s
arbitration agreement and rules established certain classes of individuals,
including member brokerage firms, who would benefit from brokers’ arbitration
agreements with the NASD, and that requiring the agreements to specifically
identify all intended third-party beneficiaries, known and unknown, would
frustrate the agreements’ purpose. In re
Prudential Ins., 133 F.3d at 230.

B.      ConocoPhillips’s
right to compel arbitration

We begin, as we did in Bayer,
by recognizing that the law favors arbitration once the existence of a valid
arbitration agreement has been established but does not presume the existence
and validity of such an agreement. See 265
S.W.3d at 455–56 (“If [an agreement to arbitrate] exists, then the law favors
enforcing it. But the law favoring arbitration does not go so far as to create
an obligation to arbitrate where none exists.”); see also Ellis v. Schlimmer, 337 S.W.3d 860, 862 (Tex. 2011)
(observing that presumption arises after valid arbitration agreement is
established and applies to issues unrelated to agreement’s validity); In re Poly-Am., L.P., 262 S.W.3d 337,
348 (Tex. 2008) (rejecting assertion that presumption favoring arbitration
applies to assessment of whether parties entered into enforceable arbitration
agreement). ConocoPhillips must establish that it has a right to enforce Graham’s
and Dicus’s arbitration agreements before it may enjoy the strong presumption
in favor of arbitration. See Ellis,
337 S.W.3d at 862.

Under Texas law, an entity that is not a party to a contract
may nevertheless enforce the contract as a third-party beneficiary if it
establishes that (1) the parties to the contract intended to secure a benefit
to it and (2) entered into the contract directly for its benefit. In re Palm Harbor Homes, 195 S.W.3d at
677. While the contract need not have been executed solely for the benefit of
the third-party, the benefit to the third-party must be more than merely
incidental to the contract. City of
Houston v. Williams, 353 S.W.3d 128, 146 (Tex. 2011). In determining
whether the parties intended to benefit a third-party, courts look to the
entire agreement, giving effect to all of its provisions. Id. 

The presumption is that parties contracted only for themselves;
to overcome this presumption, a third-party must make a clear showing that the
parties to the contract intended otherwise. Id.;
see also Bayer, 265 S.W.3d at 456
(stating that because party is presumed to contract only for its own benefit,
claimant had to overcome legal presumption that it was not third-party
beneficiary). But a clear showing of intent to benefit a third-party does not
require the phrase “third-party beneficiary” or any other magic words. City of Houston, 353 S.W.3d at 146. Nor must a third-party beneficiary be
expressly identified by name in the agreement. See Energy Serv. Co. of Bowie, Inc. v. Superior Snubbing Servs., Inc.,
236 S.W.3d 190, 195 (Tex. 2007). A third-party beneficiary may be identified in
the agreement by class or category of persons, all of whom may not be known to
the contracting parties at the time of execution. See In re NEXT Fin.Grp., 271 S.W.3d at 267; see also In re Prudential Ins., 133 F.3d at 230.

We hold that ConocoPhillips is a third-party beneficiary to
JVIC’s arbitration agreements with Graham and Dicus for three reasons: (1) this
construction gives meaning to all of the contracts’ arbitration language, which
differs from the contract language in Bayer;
(2) the presumption that parties contract for their own benefit does not have
its typical impact under the circumstances of this case; and (3) arbitration of
Graham’s and Dicus’s claims against ConocoPhillips is essential, rather than
incidental, to JVIC’s enjoyment of the full benefit of its contractual
arbitration rights.

1.       The
contract language

In Bayer, the
contractor’s arbitration agreement with its employee required the employee to
arbitrate certain claims “between or among [the employee and his employer], and
also between or among all other persons named, described, referred to and/or
stated anywhere in this agreement.”265 S.W.3d at 454. JVIC’s contracts with
Graham and Dicus use slightly different language, requiring arbitration of all
claims or disputes “between or among [Graham or Dicus] and JVIC” and all
disputes “between or among [Graham or Dicus] and JVIC’s . . . clients . . .
facility owners where [Graham or Dicus] perform[] services for JVIC . . . .”
Thus, these agreements put claims into two categories: (1) claims between Graham
or Dicus and JVIC, and (2) claims between Graham or Dicus and various
categories of third parties. This is distinguishable from the language in Bayer, which was broad enough to include
claims between employees and third parties and not the employer but did not
separately provide for arbitration of such claims. The second category of
claims indentified in Graham’s and Dicus’s arbitration agreements expressly
mandates arbitration of disputes in which JVIC is not a party; that obligation
to arbitrate such claims has no affect if it cannot be enforced by a third-party.
This language is therefore some indication that JVIC intended for clients like
ConocoPhillips to have the right to enforce the arbitration agreements. See City of Houston, 353 S.W.3d at 146
(requiring courts to give effect to all of arbitration’s provisions in
determining whether parties intended to benefitthird-party).

2.       Presumption
against third-party beneficiaries

As the Bayer court
observed, “a party is presumed to contract only for its own benefit[.]”265
S.W.3d at 456; see MCI Telecomm. Corp. v. Tex. Util. Elec. Co., 995 S.W.2d 647, 652 (Tex. 1999).
For this reason, contract law presumes that parties to a contract did not
intend to confer a benefit on third parties. See MCI Telecomm., 995 S.W.2d at 652. But this
presumption has less force when, as here, the contractual rights relate to
dispute resolution of specific claims, as to which a contracting party owes a
duty of indemnification and defense to the third-party claiming the benefit.
JVIC entered into the master service agreement in January 2008. Graham and
Dicus signed JVIC’s “Arbitration Agreement/Policy” in 2009 and 2010,
respectively. In light of its indemnity and defense obligations to
ConocoPhillips, JVIC, by conferring a right to enforce these arbitration
agreements on ConocoPhillips, benefitted itself. 

The Citgo court
identified a similar indemnity obligation as the basis for determining that the
contractor in that case intended to endow Citgo with a right to enforce the
contractor’s arbitration agreement with its employee.See 248 S.W.3d at 777. In Bayer,
the record established no indemnity relationship between Bayer and its
scaffolding contractor. See 265
S.W.3d at 454. In this aspect, the case before us is more akin to Citgothan Bayer.[2]

Also, unlike Bayer,
the master service agreement imposed certain duties on JVIC to protect the
safety of its employees while providing services at ConocoPhillips’s facility.
Thus, JVIC, on the one hand, assumed certain duties to ConocoPhillips regarding
its employees’ work safety and, on the other hand, benefitted itself by
providing for arbitration if one of its employees was injured on the job and
asserted claims against ConocoPhillips that fell within its indemnity
obligation.

3.       Intended
v. incidental benefit

In light of the contracts’ express contemplation of an
arbitration obligation in disputes to which JVIC is not a party, and in light
of JVIC’s interest in having such claims arbitrated as an indemnitor, the
benefit conferred on ConocoPhillips—the right to enforce JVIC’s arbitration
agreements when sued by JVIC’s employees—is not merely incidental. Cf. MCI
Telecomm., 995
S.W.2d at 651 (third-party whose transmission lines were incidentally affected
by performance of fiber optic cable installation contract was not third-party
beneficiary of contract).ConocoPhillips’s right to enforce the arbitration
agreements is necessary to effectuate one of JVIC’s apparent intended purposes
in entering into the agreement: arbitration of not only the employee’s claims
against JVIC but also the employee’s claims against JVIC’s clients, whom JVIC
has, at least in some cases, agreed to indemnify and defend in such matters. See Citgo,248 S.W.3d at 777. 

          For
all of these reasons, we conclude that ConocoPhillips is a third-party
beneficiary under JVIC’s arbitration agreements with Graham and Dicus.[3]

Scope

Having determined that ConocoPhillips is a third-party
beneficiary to JVIC’s arbitration agreements with Graham and Dicus,
ConocoPhillips is now entitled to the strong presumption that Graham and
Dicus’s claims are subject to arbitration. Ellis,
337 S.W.3d at 862 (observing that “strong presumption favoring arbitration” arises
once party seeking to arbitrate proves existence of valid arbitration
agreement). We resolve any doubts as to whether Graham’s and Dicus’s claims
fall within the scope of the agreement in favor of arbitration. Id. (stating that courts should “resolve
any doubts as to the agreement’s scope”).

The arbitration agreements expressly include any claim for
“personal” or “physical” injury between a JVIC employee and JVIC client. In
their petition, Graham and Dicus assert that they suffered “injuries to their
body and hearing” and “also suffered from stress associated with reliving the
incident.” These are “personal” and “physical” injuries. ConocoPhillips is a
JVIC client. Not only were the arbitration agreements broadly worded, they
explicitly state that the “only disputes which are not included within” their
scope are certain claims relating to workers’ compensation or unemployment
compensation and certain claims for injunctive relief. See Pepe Intern. Dev. Co. v.
Pub Brewing Co., 915 S.W.2d 925, 930 (Tex. App.—Houston [1st Dist.]
1996, no writ) (stating rule that broadly worded arbitration provisions
evidence parties’ intent to be inclusive, rather than exclusive, of claims
covered under provision). Graham’s and Dicus’s claims are neither for
injunctive relief nor workers’ or unemployment compensation. Thus, Graham’s and
Dicus’s claims fall within the scope of claims covered by the plain language of
the arbitration agreements. 

Graham and Dicus assert that their claims in this lawsuit
are outside of the scope of those agreements because: their claims arise out of
ConocoPhillips’s general tort duty and not any rights founded on their
employment relationship with JVIC; when they sustained their injuries, they
were “fleeing from an explosion” rather than performing work; and their claims
are “not the product of any commercial transaction, as is required for
applicability of the FAA.” In support of their position, Graham and Dicus rely
on 9 U.S.C. § 2 and In re NEXT Financial,
271 S.W.3d at 266–67. Section two of the FAA provides: “A written provision in
any maritime transaction or a contract evidencing a transaction involving
commerce to settle by arbitration a controversy thereafter arising out of such
contract or transaction, or the refusal to perform the whole or any part
thereof . . . shall be valid, irrevocable, and enforceable, save upon such
grounds as exist at law or in equity for revocation of any contract.” 9 U.S.C.
§ 2. The language Graham and Dicus rely on from NEXT Financial is: “Under the FAA’s plain language, an arbitrable
dispute can arise out of either the
contract containing the arbitration clause or
a transaction evidence by the contract.” 271 S.W.3d at 266 (emphasis added
by appellees). 

JVIC’s arbitration agreements with Graham and Dicus are
“contract[s] evidencing a transaction involving commerce.” See 9 U.S.C. § 2. They state that they are entered into as a
condition of JVIC’s employment of Graham and Dicus. And Graham’s and Dicus’s
claims arise out of their employment with JVIC. Graham and Dicus specifically
pled that they were “working at” ConocoPhillips’s refinery when the steam
header ruptured and that they were there as “invitees.” Their premises
liability claims against ConocoPhillips are, in fact, dependent on their invitee
status. Graham and Dicus have identified no right to be on ConocoPhillips’s
premises except as employees of JVIC performing work there.

In the very paragraph of the NEXT Financial opinion from which Graham and Dicus quote, the Supreme
Court goes on to recognize that it “has held that tort claims and other
extra-contractual claims can arise from a commercial transaction and may be
subject to arbitration agreements made under the FAA.” In re NEXT Fin., 271 S.W.3d at 267. Texas courts routinely enforce
employee-employer arbitration agreements under the FAA with respect to claims
based on personal injuries allegedly suffered by an employee while on the job. E.g.,J.B. Hunt Transp., Inc. v.
Hartman, 307 S.W.3d 804(Tex. App.—San Antonio 2010, no pet.); Nexion
Health at Omaha, Inc. v. Martin, 2010 WL 2690562, at *8(Tex. App.—Texarkana
July 7, 2010, no pet.) (mem. op.); In re Permian Tank & Mfg., Inc.,
306 S.W.3d 338, 341 (Tex. App.—Eastland 2010, orig. proceeding). We see no
reason to treat Graham’s and Dicus’s claims differently merely because they
were evacuating the work site at the time the injury occurred, and they have
provided us no authority suggesting that we do so.

We hold that Graham’s and Dicus’s claims against
ConocoPhillips are within the scope of their arbitration agreements.

Conclusion

          We
hold that the trial court erred in refusing to compel arbitration of Graham’s
and Dicus’s claims against ConocoPhillips. Accordingly, we reverse the trial
court’s order and remand with an instruction to the trial court to grant
ConocoPhillips’s motion to compel arbitration of these claims and to take such
other actions as it deems appropriate and consistent with this opinion.

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel
consists of Justices Jennings, Sharp, and Brown.

Justice
Sharp, dissenting. Dissent to follow.

 











[1]           The
arbitration agreement provides that the FAA governs first but state law will
apply in the event that the FAA is not applicable, “so as to give this
agreement the broadest application possible.” Neither party has argued that
this provision should be read as requiring the application of the Texas
Arbitration Act here. Graham and Dicus state in their brief that, because they
were “fleeing from an explosion” rather than “working” at the time of their
injuries, their claims are “not the product of any commercial transaction, as
is required for the applicability of the FAA.” But this is part of an their
argument as to whether their claims are within the scope of the arbitration
agreement. They do not assert that the FAA does not govern the dispute if the
claims are within the scope of the arbitration agreement.





[2]           Graham
and Dicus point out that the indemnification agreement between Citgo and the
contractor, Pat Tank, in Citgo
expressly referenced “arbitrator’s fees” among Citgo’s indemnifiable costs,
while the indemnification agreement between ConocoPhillips and JVIC expressly
reference “court costs” among ConocoPhillips’sindemnifiable costs. While the
reference to arbitration costs in the indemnity agreement in Citgo was probative of Pat Tank’s intent
in that case, 248 S.W.3d at 777, we do not find the absence of such reference
determinative here. JVIC’s indemnity obligations to ConocoPhillips under the
master service agreement extended beyond claims by JVIC employees to include
claims by persons with whom JVIC may not have had an arbitration agreement,
such as its invitees, subcontractors, employees or invitees of subcontractors,
and the agents, representatives, or assigns of their invitees and
subcontractors. Additionally, the record does not establish whether JVIC had
arbitration agreements with all of its employees at the time it executed the
master service agreement. While Graham had a previous arbitration agreement
with JVIC, the only arbitration agreement between Dicus and JVIC was executed
in 2010.





[3]           At oral argument, Graham and Dicus
stated that they are not requesting that we affirm the trial court’s ruling on
the basis that their claims do not fall within the scope of the arbitration
agreement. Nevertheless, because they raised and argued this issue in their
briefing, we address it below.